## COMMERCIAL AND INDUSTRIAL BANK, Plaintiff-Appellee,

v.

**Claude V. SCOTT, Defendant-Appellant.**

Court of Appeals of Tennessee,
Western Section,
at Jackson.

Oct. 12, 1983.

Permission to Appeal Denied by
Supreme Court Jan. 30, 1984.

Richard L. Winchester, Jr., Memphis, for plaintiff-appellee.

Parrish & Mulrooney, Larry Parrish and John Mulrooney, Memphis, for defendant-appellant.

HIGHERS, Judge.

This is an appeal from a summary judgment in favor of the plaintiff, Commercial and Industrial Bank, brought by the defendant, Claude V. Scott. For the reasons hereinafter stated, we affirm the decision of the trial court.

In 1974 Claude V. Scott was Division Head of Admissions and Records at State Technical Institute at Memphis (hereinafter referred to as State Tech), when he met Ize Iyamu, a Nigerian student.

In 1980, long after Iyamu had left State Tech, he and Scott began business operations together in an arrangement whereby Iyamu sought to circumvent certain currency restrictions of Nigeria to bring money into the United States. This scheme was pursued under the guise of paying academic expenses of Nigerian students in this country. According to their arrangement, Scott would write a letter on State Tech stationery relating that various individuals were students at State Tech when in fact no such individuals were enrolled there. Iyamu would then present this letter to the Nigerian Consulate General in New York, apparently to secure permission for the release of funds. The money came from Nigeria in

the form of sight drafts listing State Tech and a fictitious student as payees. Scott endorsed the draft, affixing a State Tech stamp and signing thereunder as a division head.

The drafts were handled by Commercial and Industrial Bank (hereinafter referred to as the bank). At the bank's Summer Avenue Branch, Scott and Iyamu established a joint checking account with both their signatures required for withdrawals. Scott was paid a fee for each of the transactions or each of the letters he wrote to be forwarded to the Nigerian Consulate General.

The normal banking procedure in handling a sight draft is to send the draft for collection from the drawee bank in Nigeria before the funds are credited to the payees. In this case, the drafts were presented to the Standard Chartered Bank Limited of New York which handled foreign transactions of the Bank of Nigeria. This procedure was followed in the first transaction, but after the first of the drafts was successfully paid the account of Scott and Iyamu was thereafter given immediate credit for all subsequent drafts. The number of transactions was between twenty-five and thirty.

There were no problems with the collection of any of the drafts until the last eight were presented on August 26, 1981. These drafts were for $9,750.00 each for a total of $78,000.00, and listed State Tech and a two word name not common in the United States as payees. In order for Scott to endorse the drafts for State Tech, the bank required a letter of authorization. The bank requested such a letter in the first meeting with Scott, but it was never sent. The bank proceeded with all subsequent transactions under the mistaken belief that the authorization had in fact been forwarded from State Tech and placed in the bank's files.

On the day the eight drafts were brought to the bank, the employee who normally handled the drafts was with another client, but she instructed another bank employee to handle the matter and to see that Scott signed for State Tech and that Iyamu endorsed the check for himself, since she thought that he was the other named payee.

The eight drafts were returned by Standard Chartered Bank Limited stamped "Counterfeit Draft/Signatures Forged." Upon inquiry to Standard Chartered, the bank learned that several sight drafts, whose serial numbers matched those presented by Scott, had been reported stolen from the Bank of Nigeria. Scott was notified by telephone of Standard Chartered's dishonoring the drafts. Upon discovering that Scott did not have authority to sign for State Tech, and that the bank therefore had no recourse against State Tech, suit was instituted against Scott, Iyamu, and City State Bank. City State Bank was made a defendant only to freeze funds held by Scott and Iyamu, and the plaintiff subsequently entered a voluntary dismissal as to this defendant. A default judgment was taken against Iyamu. The trial court granted summary judgment against Scott, and denied a motion to reconsider, from which Scott has brought this appeal.

The bank presented three separate grounds for recovery: common law fraud, breach of an endorser's contract, and breach of endorser's warranties. If the undisputed facts establish the plaintiff's contention upon any one of these theories, summary judgment was proper.

In *Graham v. First American National Bank*, 594 S.W.2d 723, 725 (Tenn.App.1979), the Court stated that

> in order to maintain a successful cause of action for fraudulent misrepresentation there must be proof of a false representation of an existing or past material fact. The false representation must have been made knowingly, without belief in its truth, or recklessly. Some person must have reasonably relied on it and suffered some damage as a result of the reliance. [Citation omitted].

The bank contends that Scott was guilty of fraudulent misrepresentation in that he utilized the State Tech stamp in endorsing

the instruments, and signed his name and indicated his position at State Tech, although he knew he was not authorized to endorse in the name of State Tech. Furthermore, the bank was never advised that the other named payees besides State Tech were not actually students. When asked if these individuals who were second payees on the instruments were real people, Scott stated, "I have no—they were, as far as I was concerned, they were people that he invented." He further testified in his deposition:

Q. On last question, Mr. Scott, just to summarize I think what you have testified to, it is my understanding that you're saying that as to those last eight checks which were payable to State Tech, you had absolutely no authority whatsoever to endorse those on behalf of State Tech and, in fact, State Tech had no knowledge that you endorsed those?

A. That's true.

Scott falsely represented that he had authority to endorse for State Tech, and the bank requested that Scott produce authorization from State Tech. If the bank had not mistakenly believed that the request had been satisfied, it would not have given immediate credit to Scott's account on the drafts. Scott endorsed the drafts as a division head at State Tech. When Scott was told that an authorized signature was required, he stated that he could sign. Although he contended that he told the bank the money belonged to Iyamu, his statement does not put at issue the material fact that he claimed authorization on behalf of State Tech to endorse.

■ Scott apparently seeks to counteract the allegations of the bank by asserting that bank employees were negligent in the handling of these transactions. In *Isaacs v. Bokor,* 566 S.W.2d 532, 540 (Tenn.1978), the Court stated:

In the actions for actual fraud and deceit, contributory fault of the victim generally is not considered a defense. [Citations omitted].

Further, in *Bevins v. Livesay,* 32 Tenn.App. 1, 8, 221 S.W.2d 106, 109 (1949), it was declared:

The perpetrator of a fraud should not be relieved on the ground that his victim was negligent in believing the misrepresentation and should have made an investigation of his own.

"It has been frequently declared that as between the original parties, one who has intentionally deceived the other party to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him or was guilty of negligence in so doing." 23 Am.Jur. 948.

■ We do not believe that Scott can be relieved from the effect of his fraudulent conduct by claiming that bank employees were negligent in the handling of these transactions.

■ It was the understanding of the bank, through its employees, that State Tech would cover the drafts in the event of non-payment. It was the fraudulent misrepresentation and false endorsement of Scott which induced this reliance. We believe that the elements of fraud were clearly present in this case and that summary judgment was appropriate.

In view of our holding it is unnecessary to discuss the other theories relied upon by the bank.

The judgment of the trial court is affirmed. Costs are adjudged against the appellant, Claude V. Scott.

NEARN, P.J. (W.S.), and TOMLIN, J., concur.