Helen PUSSER, Plaintiff and Appellant,

v.

S. Ralph GORDON and Stephen V. Ell-spermann, Defendants and Appellees.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Oct. 4, 1984.

Permission to Appeal Denied by
Supreme Court Jan. 22, 1985.

Erich W. Merrill, Memphis, for plaintiff and appellant.

Leo Bearman, Jr., Memphis, Don L. Smith, Nashville, for defendants and appellees.

HIGHERS, Judge.

The plaintiff, Helen Pusser, is the mother of Buford Pusser, former sheriff of McNairy County who is now deceased. At Buford Pusser's death on August 21, 1974, he left $250,000.00 to his mother and $260,-000.00 to his daughter, Dwana Pusser, in a guardianship estate. Helen Pusser was appointed guardian for Dwana Pusser, and Carl Pusser, plaintiff's husband, and Gailya Davis, plaintiff's daughter, were appointed co-administrators of the Buford Pusser estate.

On April 11, 1980, Helen Pusser filed suit against S. Ralph Gordon, a Nashville attorney, and Stephen V. Ellspermann, a certified public accountant, alleging that the defendants were guilty of professional negligence, willful fraud, and conspiracy to defraud, in connection with funds which were improperly paid by the plaintiff from the guardianship estate.

The trial court granted summary judgment for the defendants on all counts, and an appeal was duly perfected to this Court. This Court sustained the action of the trial court with reference to the allegations of negligence, based upon the running of the statute of limitations, but remanded the remaining matters to the trial court for further proceedings. After a trial upon the merits, the trial court directed a verdict in favor of the defendants from which the plaintiff has brought this appeal.

The case is, therefore, before this Court for the second time, but in this instance we are concerned only with the issues relating to fraud and conspiracy to defraud.

In order to develop the issues in this case, it is necessary to give a brief recitation of the factual background. Obsessed with the idea that her son had been murdered, the plaintiff employed an investigator named Larry Britt to inquire into the death of Buford Pusser and to probe for funds which the plaintiff believed had been wrongfully withheld from her son by the distributors of the motion pictures based on his life. The plaintiff paid for these investigative services with money from the guardianship estate. In September 1976, the Chancery Court froze the guardianship funds, and on April 23, 1977, the court removed Helen Pusser as guardian and entered judgment against her and her surety for the sum of $149,148.00, which was found to have been improperly paid from the guardianship estate (including some $105,000.00 which was paid to Britt).

Lloyd Tatum (now Judge Tatum of the Court of Criminal Appeals) served as the

plaintiff's legal counsel until August 1974. During that time he instructed plaintiff not to write any checks drawn on the guardianship estate without his approval. The plaintiff secured the defendant Gordon as her new counsel, and the defendant Ellspermann was employed by the plaintiff after Britt picked his name from a list of three or four accountants furnished by Gordon.

In her complaint against Gordon and Ellspermann, the plaintiff alleged that the negligence and breach of contract by the defendants caused her removal as guardian in that they failed to advise the plaintiff not to make unauthorized payments from the guardianship account. The complaint further alleged that the defendants were guilty of fraud in that they falsely represented to the plaintiff that she could use guardianship funds to pay Gordon, Ellspermann, and Britt for their services. She also contended that the defendants and Britt conspired in these matters to defraud the plaintiff.

At trial, the plaintiff presented evidence showing various checks drawn on the guardianship account made out to attorney Gordon, accountant Ellspermann, and investigator Britt. The plaintiff also testified that on December 14, 1975, attorney Gordon himself wrote out a check on the guardianship account in payment of his services and that she signed it. From this evidence, the plaintiff argues that the defendants knew that she was making unauthorized payments from the guardianship account.

The plaintiff contends that neither defendant informed her that she was not allowed to make payments from the guardianship funds. It is not questioned that Gordon and Ellspermann knew of the limitations on plaintiff's authority. She was restricted to expenditures of $1,000.00 per month from the guardianship account. The plaintiff concludes that since the defendants knew of the limitation, failed to inform her of it, and kept silent while she continued to disburse guardianship funds to Britt and others, a jury could infer that the defendants had conspired with Britt to drain the guardianship estate.

On the other hand, uncontroverted testimony was presented to the effect that attorney Gordon did not know of the payments from the guardianship account, that he never saw any of the checks, and that such payments were endorsed and deposited by his secretary. Concerning the December 14, 1975 check, Gordon testified that he did not write the check, that it was not his handwriting, and that his office diary showed that he was not in McNairy County at any time within several days of December 14. The plaintiff also acknowledged that she had no evidence that Gordon knew of any wrongdoing by Britt nor that the defendants overcharged for their services.

Concerning the plaintiff's allegation that the defendants did not inform her of the limitation on her authority to draw on the guardianship account, the defendants point out that the plaintiff knew that she could not write checks from the guardianship estate beyond the $1,000.00 per month which had been authorized. It was admitted by the plaintiff that neither Gordon nor Ellspermann ever told her to write checks to Britt or others out of the guardianship account.

■ In an action for fraud, there must be proof of a false representation of an existing or past material fact. The false representation must have been made knowingly, without belief in its truth, or recklessly. Some person must have reasonably relied on it and suffered some damage as a result of the reliance. *Graham v. First American National Bank*, 594 S.W.2d 723 (Tenn.App.1979). The plaintiff may not recover for fraud, however, with respect to any matter about which she had actual knowledge. *Bevins v. Livesay*, 32 Tenn. App. 1, 221 S.W.2d 106 (Tenn.App.1949).

■ When reviewing the action of a trial court in granting a defendant's motion for directed verdict, it is not the office of an appellate court to weigh the evidence. Rather, it must take the strongest legiti-

mate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in the plaintiff's favor, and disregarding any evidence to the contrary. Nevertheless, the trial court's action may be sustained where the evidence is uncontradicted and a reasonable mind could draw only one conclusion. *Bowers v. Potts*, 617 S.W.2d 149 (Tenn.App.1981).

■ The evidence is uncontradicted, and, in fact, the plaintiff admitted in her testimony, that she knew from the beginning of her appointment as guardian that she was limited to spending no more than $1,000.00 per month from the guardianship estate. The admission of the plaintiff tends to negate the allegations which she makes against the defendants. It might be argued, however, that a plaintiff who is confronted with conflicting legal advice is entitled to rely on the representations of one's current attorney. Even if a plaintiff failed to investigate the disparity, it could not be said that contributory negligence is a defense to an action for fraud. *Commercial and Industrial Bank v. Scott*, 664 S.W.2d 291 (Tenn.App.1983). "The perpetrator of a fraud should not be relieved on the ground that his victim was negligent in believing the misrepresentation and should have made an investigation of his own." *Bevins v. Livesay*, 221 S.W.2d at 109.

■ Where the plaintiff has actual knowledge, as here, however, that the representation is false, an action for fraud will not lie. As stated in *Bevins*, "Fraud involves deception and if one knows the truth, and is not deceived, he is not defrauded," citing *Freeman v. Citizens' National Bank*, 167 Tenn. 399, 70 S.W.2d 25, 29. Even if defendants in the instant case had actually stated to plaintiff that she could spend from guardianship funds beyond the limitation, her own knowledge gained in open court would cast doubt upon her allegations of fraud. Where the uncontradicted proof shows, however, that defendants gave no such instructions to the plaintiff, and where the plaintiff had actual knowledge of the limitations imposed upon

her by court, her action for fraud will not lie.

■ The plaintiff further alleged a conspiracy to defraud. As defined in *Dale v. Thomas H. Temple Co.*, 186 Tenn. 69, 208 S.W.2d 344 (Tenn.1948), "[a] 'conspiracy to defraud' on the part of two or more persons means a common purpose, supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and that each has the understanding that the other has that purpose." 208 S.W.2d at 353–354. Having determined that plaintiff's actual knowledge precludes her recovery for fraud, we hold that the plaintiff may not recover for conspiracy to defraud when fraud cannot be established.

■ As stated in 15A C.J.S. *Conspiracy*, § 9:

A mere conspiracy to commit a fraud is never of itself a cause of action; it must be proved that there was a conspiracy to defraud and a participation in the fraudulent purpose, either in the scheme or in its execution, which worked injury as a proximate consequence. It is the civil wrong resulting in damage and not the conspiracy which constitutes the cause of action for conspiracy to defraud.

■ The proof offered by the plaintiff consists of inferences built upon inferences. Because she wrote checks to the defendants on the guardianship account, she infers that the defendants knew that she was exceeding her authority as guardian. Building upon that inference, she further infers that since defendants knew of her improper disbursements, and they remained silent and did not instruct the plaintiff to cease such payments, they had an intent to deceive the plaintiff. Still further, she infers that since the defendants had an intent to deceive her, they therefore had a common, shared, and conspiratorial intent to deceive. It is clear that competent proof cannot be established by an inference drawn from an inference. *Umstattd v. Metropolitan Life Insurance Co.*, 21 Tenn.App. 312, 110 S.W.2d 243 (Tenn.

App.1937); *Bowers v. Potts, supra.* Based upon the evidence before the trial court at the conclusion of the proof, we believe that court was entirely correct in directing a verdict for the defendants.

For the reasons stated, the action of the trial court is affirmed. Costs are assessed against the plaintiff-appellant.

NEARN, P.J. (W.S.), and TOMLIN, J., concur.