KEVIN CALDWELL,                      )        Rutherford County Circuit
                                     )        No.  34547
        Plaintiff/Appellant,         )
                                     )
VS.                                  )
                                     )
NISSAN MOTOR MANUFACTURING           )        Appeal No.
CORPORATION, U.S.A.,                 )        01A01-9703-CV-00096
                                     )
        Defendant/Appellee.          )

FILED

October 22, 1997

Cecil W. Crowson
Appellate Court Clerk

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEAL FROM CIRCUIT COURT OF RUTHERFORD COUNTY
AT MURFREESBORO, TENNESSEE

HONORABLE DON R. ASH, JUDGE

Shelley I. Stiles
5214 Maryland Way, #210
Brentwood, TN 37027
ATTORNEY FOR PLAINTIFF/APPELLANT


Andree Sophia Blumstein
SHERRARD & ROE PLC
424 Church St., Suite 2000
Nashville, TN 37219
ATTORNEY FOR DEFENDANT/APPELLEE,

AFFIRMED AND REMANDED

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE

| KEVIN CALDWELL, | ) | Rutherford County Circuit |
| | ) | No. 34547 |
| Plaintiff/Appellant, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| NISSAN MOTOR MANUFACTURING | ) | Appeal No. |
| CORPORATION USA, | ) | 01A01-9703-CV-00096 |
| | ) | |
| Defendant/Appellee. | ) | |

# **O P I N I O N**

The plaintiff, Kevin Caldwell, has appealed from a summary judgment dismissing his suit against Nissan Manufacturing Corp. U.S.A., his former employer, for damages resulting from the termination of his employment in retaliation for his claiming workers compensation benefits.

In this Court, plaintiff presents a single issue in the following words:

> I.  Whether there are material facts in dispute rendering the trial court's granting of defendant's motion for summary judgment erroneous.

Defendant presents the issues in the following form:

> 1.  Whether, as the trial court found in this retaliatory discharge case, plaintiff has filed to carry his burden of presenting compelling circumstantial evidence of a causal connection between his claim for workers' compensation benefits and the termination of his employment?
>
> 2.  Even assuming that the plaintiff has presented sufficient evidence of causation to make out a prima facie case of retaliatory discharge, whether the fact that plaintiff was discharged from employment pursuant to a facially neutral and uniformly applied company policy shows that the defendant had a legitimate, non-pretextual, non-retaliatory reason for discharging the plaintiff from employment?

As material to this appeal, the complaint alleges:

1.  Plaintiff was injured on the job on or about March 18, 1992, and reinjured on August 12, 1992.

2. Plaintiff worked for defendant during the months of February through August prior to the second injury.

3. (On an unstated date) plaintiff filed a workers compensation claim and subsequently (date unstated) plaintiff was awarded compensation benefits.

4. On or about April 6, 1993, after the worker's compensation claim was filed, defendant notified plaintiff that he was discharged.

5. It is plaintiff's contention that Nissan discharged him because of his filing a workers compensation claim and the underlying work injuries.

6. Plaintiff filed a workers compensation claim and subsequently was awarded workers compensation benefits in the case of *Kevin Marshall v. Royal Insurance Company*, No. 11857, Marshall Circuit Court. (The date and amount of the award are not stated in the complaint.)

7. Plaintiff was dismissed because of his filing a workers compensation claim and pursuing in court his workers compensation benefits.

The prayers of the complaint are for damages, reinstatement, back pay and benefits, other compensatory and punitive damages and attorney's fees.

The plaintiff admits to the two injuries on the premises of defendant and the subsequent award of benefits, but does not supply any details. Defendant admits that defendant discharged plaintiff effective April 6, 1993, but denies any causal link between the discharge and the workers compensation claim.

On February 28, 1995, defendant filed a motion for summary judgment stating:

> The grounds of this motion are that there is no genuine issue of fact that the plaintiff was terminated for violating company policy by performing unauthorized work while on workers compensation leave of absence and by denying that he did so.

Defendant supported its motion for summary judgment by affidavit of Galen Medlin, plaintiff's responses to requests for admissions and for production of documents, and numerous other documents.

On March 17, 1995, plaintiff responded to the motion for summary judgment supported by his own affidavit and that of his treating physician.

On October 1, 1996, defendant filed a "Supplemental Motion for Summary judgment" stating:

> Comes now the Defendant, Nissan Motor Manufacturing Corporation, U.S.A., by and through its lawful counsel, and pursuant to Rule 56 of the Tennessee Rules of Civil Procedure, moves this Honorable Court for an Order granting it Summary Judgment, dismissing the Plaintiff's case in its entirety with prejudice, and for grounds therefore (sic) would state that there is no legal basis to support Plaintiff's cause of action, there is no genuine issue as to any material fact, and the Defendant is entitled to Summary Judgment as a matter of law.
>
> This Supplemental Motion and its predecessor Motion are supported by this notice, the filed pleadings, various medical records concerning treatment rendered to Plaintiff, various deposition transcripts, various affidavits on behalf of Defendant, the Memorandum of Law, the Supplemental Memorandum of Law and permissible argument of counsel.

On November 8, 1996, plaintiff responded to defendant's supplemental motion for summary judgment with supporting affidavits.

On December 19, 1996, the Trial Court entered summary judgment of dismissal, incorporating therein his memorandum opinion which stated:

It is the opinion of this Court that there is no casual link that the plaintiff was terminated because he had made a claim for worker's compensation benefits. The affidavits of the plaintiff and his workers' compensation attorney, alleging a wrongful discharge, do not create a genuine issue of material fact. The Court further finds the plaintiff was terminated pursuant to a neutral policy of the defendant to terminate employees who do not comply with their policy of working outside the company while on worker's compensation.

A party who moves for summary judgment has the initial burden of producing admissible, competent evidence of a material fact or facts which, if uncontradicted, entitle the moving party to judgment as a matter of law. *Byrd v. Hall*, Tenn. 1993, 847 S.W.2d 208.

When the moving party has satisfied this initial burden, then the burden of proceeding shifts to the opponent of the motion to produce admissible, competent evidence to contradict that offered by the moving party or admissible, competent evidence of another fact or facts which would disentitle the moving party to a summary judgment despite the fact or facts shown in support of the motion. *Street v. J. C. Bradford & Co.* (6th Cir. 1989), 886 F.2d 1472. The evidence of the non-moving party must show more than a mere metaphysical doubt as to material facts, but must include competent and material evidence of the non existence of facts asserted by the moving party and/or other facts which effectively disentitle the moving party to summary judgment. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 104 S.Cl. 1348, 89 L.Ed.2d 538 (1986).

Employees in cases like this must demonstrate that they will be able to prove at trial that their pursuit for worker's compensation benefits was a substantial factor in their employer's decision to fire them. *Anderson v. Standard Register Co.*, 857 S.W.2d at 558. If an employee elects to shoulder this burden with circumstantial evidence, the employee must present direct and compelling circumstantial evidence. *Thomason v. Better-Bilt Aluminum Prods., Inc.*, Tenn. App. 1992, 831 S.W.2d 291, 293.

In the present case, the issue on appeal appears to be whether the defendant-employer supported its motion for summary judgment with uncontradicted, competent admissible evidence of a legitimate cause or causes for termination of plaintiff, i.e., either (1) that the plaintiff was physically disqualified for employment in plaintiff's plant, or (2) that plaintiff violated an employment policy of the employer by accepting employment with a different employer while receiving from the defendant employee workers compensation for temporary disability without written application to the employer for permission and receiving from the employer written permission for such extra curricular employment.

This Court must first consider whether the motion for summary judgment was supported by competent, admissible, material of uncontradicted evidence of facts which entitle defendant to summary judgment as a matter of law.

The affidavit of Mr. Medlin stated:

> 1.     My name is Galen Medlin. I am 45 years old, am competent to make this affidavit and do testify herein based upon personal knowledge.

> 2.     I am currently employed as Department Manager, Human Resources Operations for Nissan Motor Manufacturing Corporation U.S.A. ("Nissan").

> 3.     From October 1991 to April 1993, I was employed as Section Manager of Human Resources for the Trim and Chassis Plant. In that capacity, I administered company policies and employee benefit plans, responded to questions regarding company policies and employee benefit plans, and administered corrective action, up to and including termination, on employees who violate company policies.

> 4.     In my capacity as Section Manager of Human Resources for the Trim and Chassis Plant I was familiar with and have knowledge of Nissan's policy with respect to employees working while on leave of absence and the implementation of that policy.

> 5.     Additionally, I communicated directly with Kevin Caldwell, a production technician in the Trim Car department of the Trim and Chassis Plant, regarding him working while on leave of absence, and I was the person in Nissan management who told Kevin Caldwell he was terminated from employment at Nissan.

6. Finally, I have reviewed my notes made simultaneously with my communications with Kevin Caldwell, and I have reviewed reports and records maintained by Nissan made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit the same in the course of a regularly conducted business activity and as a regular practice of that business activity to make the records or memorandum.

7. Based on the foregoing, it is my testimony that Kevin Caldwell is a 28 year old male who began his employment as a production technician in the Nissan Trim Car department of the Trim and Chassis plant on February 2, 1992.

8. Mr. Caldwell sustained an on-the-job injury to his back and went out on leave of absence on August 18, 1992 and remained out on leave.

9. On January 4, 1993, Mr. Caldwell's treating physician, Dr. Stanley Hopp, found that Mr. Caldwell had reached maximum medical improvement. Dr. Hopp also assigned Mr. Caldwell permanent restrictions.

10. There was no job within Mr. Caldwell's department at Nissan which fit the plaintiff's restrictions, so, in accordance with Nissan policy, Mr. Caldwell was not returned to work at Nissan at that time. Mr. Caldwell, though, remained a Nissan employee, with the opportunity to obtain long term disability benefits (which were, in fact, paid to the plaintiff, commencing March 10 1993).

11. Nissan has a company policy regarding working while on leave of absence. The Employee Handbook states that policy as follows, "Performing unauthorized work for personal gain while on a leave will be cause for termination."

12. Because the requests to work while on leave must be evaluated by members of both Nissan's Medical and Human Resources staff, an employee who requests to work while on leave of absence is instructed to submit a written request describing the nature of the work the employee proposes to do while on leave.

13. On or about March 9, 1993, I spoke with Mr. Caldwell by telephone. I was returning a message Mr. Caldwell had left for me to call him.

14. The conversation began with Mr. Caldwell stating that he had some questions about working while on leave of absence. I explained to Mr. Caldwell that he needed to submit, in writing, a request to work and describe in the request the work he wanted to do.

15. Mr. Caldwell responded that he did not see why this procedure was necessary and that what he planned to do was none of Nissan's concern. Mr. Caldwell also stated that he planned to substitute as a teacher and that he wanted to work as a waiter. Mr. Caldwell told me that he had discussed this work with an employee in Nissan's Medical Department who had told him to provide a written request to work while on leave of absence to Nissan's Human Resources staff. Mr. Caldwell stated that he did not understand why I could not give him permission over the telephone.

16. I told Mr. Caldwell that it was Nissan's procedure that the request must be made by the employee in writing and that that was the only way it could be granted.

- - - -

19. I never received from the plaintiff a written request to work while on leave of absence.

20. On or about March 17, 1993, I contacted three school systems in the area and learned that Mr. Caldwell had, in fact, already been working for the Marshall County Board of Education for as long as a month or six weeks (i.e., since February of 1993) as a substitute teacher.

21. Because Mr. Caldwell had worked while on leave of absence without having followed company procedure to obtain authorization from Nissan to do so, and had denied to me that he had engaged in any work while on leave of absence when, in fact, he had done so, I followed customary company practice and reported these violations to other members of Nissan's management and recommended Mr. Caldwell's termination.

22. As per company policy, I received instructions to terminate Mr. Caldwell for violating Nissan's policy regarding working while on leave.

23. On April 6, 1993, I met with Mr. Caldwell, told him that he had violated company policy regarding working while on leave, and told him his employment with Nissan was terminated.

Although some doubt may exist as to the first-hand knowledge of Mr. Medlin of some of the facts stated in his affidavit, any such infirmity is cured by the affidavits of other employees and the admissions of plaintiff also exhibited to the motion for summary judgment.

Plaintiff's claim that his work supervisor approved his working elsewhere is ineffective because no written request was submitted and there is no evidence of the authority of the work supervisor to grant any such permission.

It is also undisputed that plaintiff produced no physician's authorization for outside work until he had been working outside for nearly two months.

The defendant has shown by uncontradicted evidence a non-pretextual and justifiable reason and cause of the discharge of plaintiff. Prior to the discovery of the violation of the rule on outside work, defendant was overly generous in dealing with plaintiff who was hired for a 90-day trial period and did not qualify during the first 90 days. Nevertheless, he was granted a second 90-day trial period during which he was injured. So far as this record shows, plaintiff received all of the benefits due him as workers compensation.

Plaintiff has offered nothing more than his own conception of why he was discharged, plaintiff has shown no evidence contrary to that offered by defendant. This is simply not sufficient to overcome the direct, undisputed reason shown by defendant. *Newsome v. Textron Aerostructures*, Tenn. App. 1995, 924 S.W.2d 87.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the plaintiff. The cause is remanded to the Trial Court for any necessary further proceedings.

**AFFIRMED AND REMANDED**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

_____
BEN H. CANTRELL, JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE