IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

December 17, 1998

Cecil Crowson, Jr.
Appellate Court
Clerk

| | |
|---|---|
| USI CAR EXCHANGE, INC. and CHARLES 03A01-9707-CV-00268 R. WEEMS, Individually, | ) C/A NO. ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| LONG PONTIAC COMPANY and ALLAN LEDFORD, Individually, | ) ) ) |
| Defendants. | ) ) ) ) ) ) |
| LONG PONTIAC COMPANY, | ) ) |
| Plaintiff-Appellant, | ) APPEAL AS OF RIGHT FROM THE ) HAMILTON COUNTY CIRCUIT COURT ) |
| v. | ) ) ) ) |
| ALLAN LEDFORD, Individually and wife, TERRI LEDFORD, Individually; ALLAN LEDFORD d/b/a PRESTIGE CLEANERS, a Sole Proprietorship; SIGNATURE AUTO CREDIT, INC.; MIDDLE TENNESSEE MOTOR CARS, INC.; GAMBLE MOTOR COMPANY, INC.; WSI CAR EXCHANGE, INC.; CHARLES R. WEEMS, Individually; ROBERT OLIVER, Individually and wife, LOIS OLIVER, Individually, | ) ) ) ) ) ) ) ) ) ) |
| Defendants-Appellees. | ) HONORABLE SAMUEL H. PAYNE, ) JUDGE |

For Appellant

F. SCOTT LEROY
Leitner, Williams, Dooley
 & Napolitan, PLLC
Chattanooga, Tennessee

For Appellee Charles R. Weems
  and USI Car Exchange, Inc.

DAVID B. KESLER
STACIE L. CARAWAY
Spears, Moore, Rebman &

1

Williams
Chattanooga, Tennessee
For Appellee Middle
  Tennessee Motor Cars, Inc.

NADER BAYDOUN
STEPHEN KNIGHT
Baydoun & Reese, P.A.
Nashvile, Tennessee


For Appellee Gamble
 Motor Company, Inc.

K. STEPHEN POWERS
LISA M. PATE
Witt, Gaither & Whitaker, P.C.
Chattanooga, Tennessee

OPINION

AFFIRMED AND REMANDED                                    Susano, J.

This is an action[1] for damages filed by Long Pontiac Company ("Long"), against multiple defendants, arising out of the defalcations of Long's agent, Allan Ledford ("Ledford"). Long appealed from the trial court's judgment, arguing that the trial court erred in granting summary judgment to the defendants, Charles R. Weems ("Weems"), USI Car Exchange, Inc. ("USI"),[2] Gamble Motor Company, Inc. ("Gamble"), and Middle Tennessee Motor Cars, Inc. ("MTMC"), all of whom acknowledge purchasing automobiles from Ledford at Long's place of business. Long, in its complaint for fraud, conspiracy to defraud, conversion, and gross negligence, alleges that the defendants knew or should have known (a) that Ledford was engaging in criminal activity[3] to defraud Long and (b) that Ledford was exceeding the authority granted to him by Long. The trial court concluded that no genuine issues of material fact existed with respect to Long's claims and, furthermore, that the defendants were entitled to summary judgment as a matter of law. On this appeal, Long essentially presents the following question for our review:

> In granting summary judgment, did the trial court err in determining that no genuine issue of material fact exists?

---

[1] On the cover sheet of this opinion, we have reflected the styles of these consolidated cases as they appear on the parties' briefs; however, the judgments appealed from only appear to relate to the litigation instituted by Long Pontiac Company.

[2] USI is identified in one of the cases as WSI Car Exchange, Inc. All references in this opinion to USI include WSI Car Exchange, Inc.

[3] Apparently, Ledford began defrauding Long in 1993. His criminal activity went undiscovered by Long until late 1994. During the period of this criminal activity, Ledford was General Sales Manager of Long. It is undisputed that Ledford had Long's authority to act in this capacity in his dealings with the defendants.

## I. *Facts*

The events leading to this litigation began in early 1994 when Weems, a wholesale dealer of used cars, went to Long in search of used vehicles to purchase on behalf of his company, USI,[4] and on behalf of Gamble, another car dealership. Weems was instructed by Long's finance manager to see Ledford regarding several used cars in which Weems had an interest. Ledford told Weems that he was General Manager[5] and a part owner of the company. Weems and Ledford commenced a business arrangement pursuant to which Weems thereafter purchased used cars at wholesale prices set by Ledford and agreed to by Weems.

During the seven-month period of his dealings with Long, Weems dealt exclusively with Ledford on all purchases. Weems and Ledford completed over 70 transactions involving more than 100 used vehicles. In all of these transactions, Weems inspected and took delivery of the vehicles at Long's place of business. He also paid for every purchase by writing a check on the bank account of either USI or Gamble. After Weems tendered the checks and received possession of the vehicles, Long[6] sent Weems the paperwork relating to the sales, including titles, odometer statements, and sometimes bills of sale on the vehicles.[7]

---

[4] Weems was a shareholder, officer, and the principal agent of USI.

[5] It is undisputed that Ledford's official title was General Sales Manager and that he was a part owner of the company.

[6] The record does not indicate which employee or department of Long was responsible for handling the paperwork.

[7] It is not clear whether Weems received the paperwork on cars purchased by Weems on Gamble's behalf or if he received only the paperwork on cars he purchased for USI.

In the beginning, Weems made all checks payable to Long. Later, Ledford directed Weems to make the checks payable to Signature Auto, Quality Motors, or to individuals or entities whom Ledford identified as customers who had traded vehicles to Long. He explained to Weems that this would expedite the title process and that both Signature Auto and Quality Motors were Long's "tote-lots". Tote-lots are off-site car lots used to sell low-value vehicles that have been sold or traded to a dealer. Thereafter, Weems wrote checks on his principals' bank accounts as directed by Ledford. Early on, Weems noted that the paperwork on purchases for which he had written checks to Signature Auto or Quality Motors, listed Long as the seller of the vehicles. When he discussed this with Ledford, Ledford told him that he and Nelson Long, president of Long, were involved in several different companies, and that "it made no difference" as to whom the check was made payable. Ledford represented to Weems that he had Long's "full authority and consent" to conduct these transactions.

In some transactions, Ledford directed Weems to make checks payable to him individually. He told Weems that he personally owned the vehicles being sold. On one occasion, Ledford told Weems to leave the payee on the check blank because he did not know the company, *i.e.*, Signature Auto, Quality Motors, or Long, through whom the cars would be billed. This check, written on Gamble's account, was ultimately filled in by Ledford with the name of Prestige Cleaners as the payee. Prestige Cleaners was a company personally owned by Ledford. It was not affiliated in any way with Long. Weems did not become

6

aware that Ledford had inserted Prestige Cleaners as the payee until after Long discovered Ledford's criminal activity. Also, most of the checks written by Weems involved payment for more than one vehicle. At Ledford's direction, Weems did not note on these checks the wholesale prices of the various vehicles purchased in those transactions.

In addition to doing business with Weems in 1994, Ledford also sold used cars to MTMC through Paul Kitchen ("Kitchen"), an agent of MTMC. In September, 1994, Ledford arranged with Kitchen to sell MTMC a "high dollar" used vehicle. On this occasion, Kitchen took delivery of the vehicle at Long's place of business, without immediately writing a check for its purchase. A few days later, an unidentified employee of Long delivered the paperwork to MTMC and requested a check payable to Signature Auto. Since Kitchen had been told previously by Ledford that Signature Auto was a tote-lot for Long, and because the paperwork, which included the title, odometer statement, and bill of sale, listed Signature Auto as the seller, MTMC wrote a check payable to Signature Auto for the purchase of the vehicle.

Sometime in late 1994, Long discovered Ledford's criminal activity. Long then pressed charges against him. Ledford was convicted and given a sentence of ten years imprisonment. He was ordered to pay restitution of $700,000. Long then filed this suit against Weems, USI, Gamble, MTMC, and others.[8] The defendants answered, denying they were guilty of any of the allegations set forth in the complaint.

_____

[8]Long's claims against the appellees are before us pursuant to Rule 54.02, Tenn.R.Civ.P.

Weems filed a motion for summary judgment on his and USI's behalf, stating that there were no genuine issues of material fact.[9]  He supported his motion with his personal affidavit; Ledford's deposition; and various exhibits.  Gamble subsequently filed a motion for summary judgment, also averring that no genuine issues of material fact existed as to the claims against it.  Gamble supported its motion with the affidavit of its President, James T. Gamble; an affidavit from Weems; Ledford's deposition; and other documents.  Finally, MTMC filed its motion for summary judgment, also taking the position that no genuine issues of material fact existed as to any of Long's claims.  MTMC supported its motion with the pleadings; Long's discovery responses; Ledford's deposition; and an affidavit from Paul Kitchen.

Long responded[10] to the motions of Weems and Gamble, contending that genuine issues of fact did exist regarding the movants' knowledge of whether Ledford was exceeding his authority.  Long supported its response with the pleadings, the affidavit of its President, Nelson Long; the deposition of Weems; the interrogatory responses of Weems; and the entire record in the case.  Still later, Long responded to MTMC's motion for summary judgment, again stating that genuine issues of fact existed regarding that defendant's knowledge of whether Ledford was exceeding his authority.  It supported its motion with two affidavits of Nelson Long and the entire record in the case.  The

---

[9]References to Weems in the opinion will include his company, USI.

[10]Long's motion before us to consider the portions of Weems' deposition attached to its brief in response to the defendants' motions for summary judgment, filed in the trial court, is granted.

8

trial court granted summary judgment on all claims against the appellees, finding that no genuine issues of material fact existed. The court later denied Long's motion to alter or amend[11] the final judgment as to Weems, USI, and Gamble.

## II. *Standard of Review*

We examine the trial court's grant of summary judgment under the standard set forth in Rule 56.04, Tenn.R.Civ.P. Summary judgment is appropriate where:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Id*. The moving party has the initial burden of producing competent, material evidence showing that there is no genuine issue as to any material fact. **Byrd v. Hall**, 847 S.W.2d 208, 211 (Tenn. 1993). The moving party can satisfy this burden by offering evidence that "affirmatively negate[s] an essential element of the nonmoving party's claim," or the moving party can "conclusively establish an affirmative defense that defeats the nonmoving party's claim." **Id**. at 215 n.5. The moving party is entitled to summary judgment unless the nonmoving party contradicts the factual predicate of the motion by presenting

---

[11]Long's outside auditors identified a considerable number of vehicles that are related to Ledford's business arrangement with Weems, USI, and Gamble. Long moved to have the court consider this information on the grounds of mistake, surprise, fraud, and misrepresentation, or other misconduct of Weems, USI, or Gamble. The trial court denied the motion.

9

competent and admissible material evidence. ***Caldwell v. Nissan Motor Mfg. Corp.***, 968 S.W.2d 863, 865 (Tenn.App. 1997). The nonmoving party "must set forth *specific facts* showing that there is a genuine issue of material fact for trial." ***Byrd***, 847 S.W.2d at 211. (Emphasis in ***Byrd***).

Our review of a grant of summary judgment involves only a question of law, and hence no presumption of correctness attaches to the trial court's judgment. ***McCall v. Wilder***, 913 S.W.2d 150, 153 (Tenn. 1995); ***Carvell v. Bottoms,*** 900 S.W.2d 23, 26 (Tenn. 1995); ***Gonzales v. Alman Constr. Co.,*** 857 S.W.2d 42, 44 (Tenn.App. 1993). In evaluating a motion for summary judgment, we must determine: "(1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial." ***Byrd***, 847 S.W.2d at 214. (Emphasis in ***Byrd***). In making our evaluation, we must "view the evidence in a light favorable to the nonmoving party and allow all reasonable inferences in his favor." ***Id***. at 215. Summary judgment should be granted if the facts and conclusions permit a reasonable person to reach only one conclusion. ***Carvell***, 900 S.W.2d at 26.

III. *The Parties' Contentions*

Long argues that the judgment of the trial court should be vacated for several reasons. It contends that summary judgment is inappropriate because the defendants have not carried their burden of establishing (1) a lack of material factual

10

issues and (2) their entitlement to judgment as a matter of law. Long insists that the defendants knew or should have known that Ledford exceeded his authority as Long's agent when he instructed Weems and MTMC to make checks payable to individuals or entities other than Long. It further argues that material factual issues remain regarding the defendants' knowledge of Ledford's criminal activities and their participation in practices that were contrary to the usual and customary practices of the automobile industry regarding the transfer of car titles.

The defendants, meanwhile, argue that Ledford's actions are the sole cause of Long's losses. They argue that their actions were in good faith and at the authorized direction of Ledford, who had actual and apparent authority as the General Sales Manager of Long.

IV. *Applicable Law and Analysis*

We begin our analysis of this case by noting that the parties to this controversy appear to agree on the basic facts of the case, *i.e.,* that Ledford worked for Long as its General Sales Manager; that he had the authority to sell cars on behalf of Long; that vehicles were delivered to the defendants in every transaction; and that Ledford engaged in criminal activities during the time that Weems, Gamble, and MTMC were customers of Long. We must now examine each claim, in turn, to determine if any material facts are in dispute, so as to preclude summary judgment.

11

## A. *Fraud*

To prevail on a claim of fraud at trial, Long must establish "an intentional misrepresentation with regard to a material fact; knowledge of the representation's falsity, *i.e.,* it was made 'knowingly' or 'without belief in its truth' or 'recklessly' without regard to its truth or falsity; the plaintiff reasonably relied on the misrepresentation and suffered damages; and the misrepresentation relates to an existing or past fact." *Hill v. John Banks Buick, Inc.*, 875 S.W.2d 667, 670 (Tenn.App. 1993).

In addition, the concealment or nondisclosure of a material fact affecting a transaction constitutes fraud when it is the duty of a party having knowledge of the facts to disclose them to the other party. *Id. Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 685 (Tenn.App. 1986). Generally speaking, a duty to disclose facts, otherwise concealed or not disclosed, exists in three situations:

1. Where there is a previous definite fiduciary relation between the parties.

2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.

3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith. The contract of insurance is an example of this class.

13

*Justice v. Anderson County*, 955 S.W.2d 613, 616-617 (Tenn.App. 1997) (quoting from *In Domestic Sewing Machine Co. v. Jackson*, 83 Tenn. 418 (Tenn. 1885)).

In the instant case, all three defendants -- Weems, Gamble, and MTMC -- deny, through their affidavits and other documents, that they possessed any intent to misrepresent any fact to Long or that they had knowledge that any representation made by them was false. Indeed, the defendants present evidence that *all* of the representations made by them on their checks and other documents related to the various sales were prompted by Ledford's directions. Long does not provide any specific facts showing that the defendants knew that Ledford's directions to them were part of his scheme to defraud Long.[12] The nonmoving party has the burden of showing that a genuine issue of material fact exists. *Byrd*, 847 S.W.2d at 211. While there appear to be factual disputes regarding the customary and usual practices of the automobile industry, we do not find that these facts are material to Long's claim of fraud. "A 'material fact' has been

---

[12]Nelson Long asserts these facts in his affidavit:

> It is not customary or a common trade practice to give blank checks to employees of automobile dealerships for the purchases of new or used vehicles.
>
> It is not customary or ordinary for a wholesaler to purchase cars from a tote lot.
>
> Some of the cars purchased by Mr. Weems had never been titled which in my experience . . . would constitute a rare occurrence in the automobile industry.
>
> It is common practice for dealerships to prohibit employees and agents from selling and dealing in cars in competition with the dealership by which they are employed.
>
> It would be very unusual and suspect for a dealership's employee or agent to direct a wholesaler to make their check payable to an entity other than the dealership by which the agent or employee was employed.

14

defined as a fact 'that must be decided in order to resolve the substantive claim or defense at which the motion is directed.'" *Suddath v. Parks,* 914 S.W. 2d 910, 913 (Tenn.App. 1995) (quoting *Byrd,* 847 S.W.2d at 211. Accordingly, we find that Long has provided no evidence to establish that a material factual issue exists on the element of intent to misrepresent information, or with respect to the defendants' knowledge of the falsity of their representations.

Long claims that the fraudulent actions of Ledford should be imputed to Weems, Gamble, and MTMC because of the defendants' knowledge of the usual and customary practices of the automobile industry. We are not persuaded by this argument. There are simply no facts before us demonstrating that the usual and customary practices of the automobile industry were such as to put the defendants on notice that Ledford was acting in a fraudulent manner. The fact that a general sales manager of an automobile dealership directs a customer to make out a check in a manner that does not coincide with the customary practice of the industry does not, in and of itself, put that customer on notice that the general sales manager is acting in a fraudulent manner, especially when the transaction, as directed by that general sales manager, is not fraudulent on its face. Here, the customers did as they were directed by Long's chief salesman, whose directions were reasonable, given his explanations for those directions. There was nothing about those directions to put the purchasers on notice that Ledford was acting fraudulently. It is not enough in this case to show that the transactions were not handled in the customary manner; it is

15

necessary to show that the manner in which they were handled reasonably should have put the purchasers on notice that Ledford was acting fraudulently.  Such a showing is required in order to overcome the facts presented by the purchasers showing that the purchasers had no knowledge of Ledford's illegal activity.  Long's proof simply does not make out a genuine issue of material fact as to whether the purchasers knew or should reasonably have known that Ledford was engaged in fraudulent activity.

Long has not advanced any evidence that Weems, Gamble, or MTMC were in a fiduciary relationship, or one of trust and confidence, with Long.  Furthermore, Long has not presented any direct and material evidence that the transactions at issue were not transactions at arms length between Ledford, on the one hand, and Weems, Gamble, and MTMC on the other.  In each and every transaction at issue in this case, the sales price was negotiated and agreed upon by the parties, and paid by the defendants.  Ledford, as General Sales Manager, or another Long employee, gave specific instructions to Weems and MTMC as to how their checks were to be made out.  We do not find any basis in law to establish that Weems, Gamble, and MTMC had a duty to detect and disclose to Long the fraudulent activity of Ledford.  Furthermore, even if a party has a duty to disclose, it cannot be expected to disclose fraudulent activity of which it is not aware.  There is absolutely no evidence in this case reflecting fraud by concealment or nondisclosure.  All of the evidence is to the contrary.

16

The defendants' filings negate essential elements of Long's fraud claim. Long's responses do not make out a genuine issue of material fact precluding a grant of summary judgment.

### B. *Conspiracy to Defraud*

To prevail on a claim for conspiracy to defraud, Long must establish the following elements:

> [a] "conspiracy to defraud" on the part of two or more persons means a common purpose, supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and that each has the understanding that the other has that purpose.

**Pusser v. Gordon**, 684 S.W.2d 639, 642 (Tenn.App. 1985), (quoting **Dale v. Thomas H. Temple Co.**, 208 S.W.2d 344, 353-54 (Tenn. 1948)). Further, conspiracy, without proof of fraud, is not a cause of action. **Pusser**, 684 S.W.2d at 642.

As we have previously explained, the record contains uncontroverted evidence by which Weems, Gamble, and MTMC affirmatively negated essential elements of the claim of their participation in fraud. Therefore, the claim of conspiracy to defraud does not lie. The trial court's grant of summary judgment in favor of Weems, Gamble and MTMC on this claim was appropriate.

### C. *Conversion*

17

To be liable for conversion, a defendant "need only have an intent to exercise dominion and control over the property that is in fact inconsistent with the plaintiff's rights, and do so." *Mammoth Cave Production Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn.App. 1977). In the instant case, the undisputed facts reflect that the purchasers took possession of the vehicles through transactions involving the top sales official of Long. There is no evidence of any intent to exercise dominion and control over the vehicles in a manner inconsistent with Long's rights, *id.*; on the contrary, the defendants exercised dominion and control over the vehicles in a manner that was consistent with the various sales transactions entered into with Long, as represented by Ledford. The uncontradicted facts negate conversion.

### D. *Gross Negligence*

To prevail on a claim for gross negligence, Long must establish that the transactions in which Weems, Gamble, and MTMC participated with Ledford constitute "negligent act[s] done with utter unconcern for the safety of others, or [acts] done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." *Odum v. Haynes*, 494 S.W.2d 795, 807 (Tenn.App. 1972). *See Inter-City Trucking Co. v. Daniels*, 178 S.W.2d 756 (Tenn. 1944); *Craig v. Stagner*, 19 S.W.2d 234 (Tenn. 1929).

Long contends that Weems, Gamble and MTMC acted with reckless disregard for the truth regarding the ownership of the

vehicles when they relied on representations made by Ledford. However, Long has set forth no specific facts supporting a claim for gross negligence. In his affidavit, Nelson Long contends that various circumstances surrounding many of the transactions were "very unusual and suspect." He cites examples such as leaving the payee blank on one check; making checks payable directly to tote-lots; buying cars from employees, individually; buying demonstrator cars; making checks payable to individual trade-in customers; and others.

However, for each circumstance cited by Nelson Long in his affidavit, Weems, Gamble and MTMC provide evidence that they acted at the specific direction of Long's General Sales Manager. Nelson Long's affidavit does not dispute this. In all cases, vehicles were inspected and delivered to Weems, Gamble and MTMC by Ledford at the business premises of Long, where Nelson Long, was present on a full-time basis and available to discuss any transaction or vehicle. Long would have us decide that the defendants' participation in those transactions, at the direction of its General Sales Manager, and at Long's place of business where Nelson Long was available on a full-time basis, constitutes reckless disregard for Long's rights. We do not find a factual predicate for such a finding. The record contains uncontroverted evidence that the defendants were not reckless in their dealings with Ledford.[13] Long has not set forth material facts to

---

[13]In Weems'deposition, when questioned about the difference between the payee on the checks and the seller on the titles, he answers as follows:

> Q: ...[D]id you ever ask Mr. Ledford about why that was?
>
> A: We had a discussion or two about that early.
>
> Q: Okay. Tell me what you recall about those discussion or two.

19

establish that Weems, Gamble, or MTMC acted with reckless disregard for Long's ownership rights in the vehicles. Accordingly, we find that the trial court's grant of summary judgment to the defendants Weems, Gamble and MTMC on the claim of gross negligence was appropriate.

## V. *Conclusion*

For the foregoing reasons, we conclude that Weems, Gamble and MTMC have demonstrated that there are no genuine issues of material fact, and, further, that they are entitled to judgment as a matter of law. Accordingly, the judgment of the trial court is affirmed. This case is remanded to the court below for the collection of costs assessed there. The costs of this appeal are taxed against the appellant and its surety.

_____
Charles D. Susano, Jr.

CONCUR:

_____

> A: He indicated to me early on, as you'll already find that I have already said, that he and Nelson Long were involved in some other car companies, of which Signature, I specifically remember, was one of them, and it made no difference.

In addition, in the single transaction at issue between Long and MTMC, Kitchen asserts the following in his affidavit:

> Several days after I took the vehicle, another employee of Long Pontiac delivered the title and bill of sale to me in Davidson County. This employee represented to me that the check for payment of the purchase price should be made payable to "Signature Auto Credit, Inc." as the "tote lot" for Long Pontiac. This employee also provided me with a bill of sale, odometer statement and duly executed title reflecting that "Signature Auto Credit, Inc." was the transferor dealer for this car. Mr. Ledford had also told me that "Signature Auto Credit, Inc." was the "tote lot" for Long Pontiac.

20

_____
Houston M. Goddard, P.J.


_____
Don T. McMurray, J.