IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 6, 2001 Session

## SCOTT JURGENSMEYER, ET AL. v. JAMES F. PRATER

**Appeal from the Chancery Court for Davidson County**
**No. 99-305-III      Ellen Hobbs Lyle, Chancellor**

---

**No. M2000-02986-COA-R3-CV - Filed April 24, 2003**

---

In this consolidated case involving claims of fraud, negligent misrepresentation, breach of contract, and violations of the Tennessee Consumer Protection Act, the trial court granted summary judgment for the defendant on the ground that he had not acted individually and his corporation had not been named as a defendant. For the following reasons, we reverse and remand the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Robin J. Gordon, Nashville, Tennessee, for the appellants Scott Jurgensmeyer and Jim Wise.

James H. Harris III, Nashville, Tennessee, for the appellee, James F. Prater.

### OPINION

This appeal is from a summary judgment granted to the defendant, James F. Prater, in a case which consolidated two separate cases, one brought by Scott Jurgensmeyer, and one brought by Jim Wise, both of which arose from Mr. Prater's involvement in arrangements to develop performers into recording artists. In both situations another person, Mr. Thomas Wayne Oliver, was involved and, it could be fairly said, was the primary actor.

### I. Mr. Jurgensmeyer's Complaint

In his complaint, Mr. Jurgensmeyer alleged the following facts. He is a farmer residing in the State of Missouri. In August of 1995, Mr. Jurgensmeyer met with Mr. Prater and Mr. Oliver to discuss the development of the musical career of an artist by the name of Hawke Montana. During this conversation, Mr. Oliver and Mr. Prater represented to Mr. Jurgensmeyer that it would be

possible to secure a recording contract for Hawke Montana at Curb Records for a sum to be specified at a later date. Mr. Oliver, Mr. Prater, and Mr. Jurgensmeyer entered into an oral agreement whereby Mr. Jurgensmeyer would provide the financial backing to secure the record contract, and Mr. Prater and Mr. Oliver would secure the recording contract. Mr. Jurgensmeyer caused to be delivered "a check to Defendant Prater and Oliver" in the sum of fifty thousand dollars ($50,000.00) to secure the recording agreement with Mr. Chuck Howard as producer.

On August 22, 1995, Mr. Oliver and Mr. Prater represented to Mr. Jurgensmeyer that they had procured a recording agreement for Hawke Montana with Curb Records and that Chuck Howard would be the producer for the record. On that date, Mr. Oliver and Mr. Prater provided him with a copy of a written agreement between Mr. Oliver and Big Sky Entertainment, Inc. wherein Mr. Oliver represented that he had procured a recording contract with Curb Records for Hawke Montana.

The referenced document, a letter, is signed solely by Mr. Oliver, and discusses the details of the recording contract, the tasks that must be performed before the contract will be signed, including delivery of master recordings for the album, and concludes:

> The investment in this project is $500,000, as agreed. $50,000 is in escrow at this time. The balance of $450,000 should be wire transferred on receipt of this signed statement of agreement between Big Sky Ent., Inc. and Wayne Oliver Ent. [Enterprises].

The Complaint does not identify Big Sky Entertainment, and we are unaware from the record whether there is any connection between that entity and Mr. Jurgensmeyer. In any event, Mr. Jurgensmeyer's complaint further alleged the following facts.

A few days after Mr. Jurgensmeyer received a copy of the August 22 letter, Mr. Oliver contacted Mr. Jurgensmeyer to solicit an additional $200,000 "to procure the alleged recording agreement allegedly secured." Mr. Jurgensmeyer alleges that he sent the money by wire transfer in reliance upon the representations regarding the existence and details of the recording contract. He never alleges to whom he sent the transfer, but rather asserts, "Defendant Prater and Oliver were in receipt of a wire transfer" from him for $200,000.

On January 17, 1996, Mr. Oliver and Mr. Prater informed Mr. Jurgensmeyer at a meeting that they would no longer work with Hawke Montana because he had become uncooperative. Mr. Jurgensmeyer agreed with that decision. Mr. Jurgensmeyer alleged that Mr. Oliver and Mr. Prater agreed that the $250,000 would remain in an escrow account to allow him to decide if he was interested in working with another artist. He also alleged that he later asked that the money be placed in an interest bearing certificate of deposit, but was informed that it was imperative to keep it in a liquid account.

On February 1, 1996, Mr. Prater and Mr. Oliver represented to Mr. Jurgensmeyer that they would return Mr. Jurgensmeyer's investment if he did not want to work with the new artist. On May

1, 1996, Mr. Oliver and Mr. Prater telephoned Mr. Jurgensmeyer "with respect to [his] declining the offer . . . to invest in the new artist." In that conversation, Mr. Jurgensmeyer requested the immediate return of the $250,000. Two days later, Mr. Jurgensmeyer met with Mr. Oliver and Mr. Prater in Nashville, and Mr. Oliver and Mr. Prater told him that $250,000 would be paid to him within two weeks.

When the money was not returned, Mr. Jurgensmeyer made other requests for it, and none has never been returned to him. Some time later Mr. Jurgensmeyer learned from representatives of Curb Records that no recording agreement ever existed in connection with Mr. Oliver, Mr. Prater, or Hawke Montana and there had been no agreement by Chuck Howard to produce such a record.

## II. Mr. Wise's Complaint

Beginning in 1995, Mr. Wise met with Mr. Prater and Mr. Oliver to discuss the development of Mr. Wise's career as a musical recording artist, and they met or communicated regularly thereafter. During initial conversations, Mr. Oliver and Mr. Prater told Mr. Wise that it would be possible to secure a recording contract for him with Atlantic Records for a sum to be specified later. Mr. Wise then entered into an oral agreement with Mr. Prater and Mr. Oliver whereby Mr. Wise agreed to provide the necessary financial backing to secure a recording contract and Mr. Prater and Mr. Oliver agreed to secure the contract.

Later, Mr. Prater and Mr. Oliver represented to Mr. Wise that a recording agreement had been procured for Mr. Wise at Polydor or Atlantic Records and that Norro Wilson would be the producer for the recording. Prior to October 10, 1995, Mr. Oliver represented that he had spoken with Rick Blackburn, the president of Atlantic Records, regarding the recording agreement and that Mr. Blackburn had agreed to sign Mr. Wise to such an agreement. On October 10, 1995, Mr. Wise was provided "a copy of a written memorialization of the prior oral agreement" between himself and Mr. Oliver and Mr. Prater "wherein Mr. Oliver and Defendant Prater represented that a recording agreement had been procured for Plaintiff with Polydor or Atlantic Records and that Norro Wilson would be the producer for such recording." The unsigned letter agreement dated October 10, 1995, is from Mr. Oliver, has no signature line for Mr. Prater, is addressed to Mr. Wise, and has blank signature lines for Mr. Oliver and Mr. Wise. It states "as per our agreement" Mr. Oliver had procured the recording agreement for Mr. Wise with Polydor Records or Atlantic Records of Nashville, with the producer to be Norro Wilson. It stated the agreement would be signed upon delivery of the album and the album project would take a few months to complete. It further stated:

> The investment by Jim Wise in this project is $600,000, as agreed. $300,000 is in escrow at this time and the balance of $300,000 should be placed in escrow by Jan. 15, 1996. Mr. Oliver will advise you as to the distribution of the funds. He will also coordinate all meetings between the artist, producer and the record company.

Mr. Wise paid fifty thousand dollars ($50,000.00) for use in securing the recording agreement and in reliance on the representations that such an agreement had been procured. His complaint alleges he "delivered" the sum to Mr. Oliver and Mr. Prater.

Prior to providing any additional funds to Mr. Oliver, Mr. Wise discovered from Mr. Blackburn at Atlantic Records that Atlantic Records had never agreed to sign Mr. Wise to a recording agreement and that Mr. Blackburn had never spoken with Mr. Oliver or Mr. Prater regarding such an agreement. Mr. Wise also discovered that Norro Wilson was not approved by Polydor or Atlantic Records as a producer for a recording agreement for Mr. Wise. Mr. Wise never received any of his $50,000 back.

### III. Causes of Action and the Trial Court's Ruling

Mr. Jurgensmeyer's complaint against Mr. Prater alleged:

(1) Mr. Prater had breached an oral agreement with Mr. Jurgensmeyer by failing to procure a recording contract for Hawke Montana, by failing to keep funds sent by Mr. Jurgensmeyer in an escrow account solely for use in procuring the recording contract, and by failing to return his money when no record deal materialized.

(2) Mr. Prater knowingly made fraudulent statements and misrepresentations to induce Mr. Jurgensmeyer to invest substantial sums of money by promising profits from recordings and that Mr. Prater fraudulently used the money so invested for his and Mr. Oliver's personal benefit and not to procure a recording contract.

(3) Mr. Prater negligently made misrepresentations regarding the procurement of a recording contract for Hawke Montana and regarding the arrangement with Mr. Jurgensmeyer.

(4) Mr. Prater and Mr. Oliver engaged in fraudulent activities and schemes by making fraudulent misrepresentations, all of which constituted unfair and deceptive trade practices under the Tennessee Consumer Protection Act.

Mr. Wise's complaint alleged the same causes of action on the facts set out above, except he apparently relies on both an oral and a written contract.

After the trial court consolidated the two cases, Mr. Prater filed a motion for summary judgment on the basis that he had "conducted all business pertinent to these proceedings by and through his corporation, Prater Enterprises." After a hearing on the motion, the trial court filed a memorandum and order which granted Mr. Prater's motion for summary judgment on the ground that the plaintiffs failed to raise genuine issues of material fact that Mr. Prater engaged in the alleged conduct individually. The court found that the record established that all actions taken by Mr. Prater were in his capacity as an agent/employee of Prater Enterprises, Inc. Because there was no factual

issue as to Mr. Prater's individual liability, and because the plaintiffs had not also sued the corporation (the principal),[1] the court granted summary judgment.  In explaining its decision, the court stated:

> Tennessee law does provide that it is not necessary that a particular act or failure to act be expressly authorized by the principal to bring it within the scope of the agent's authority.  Conduct is within the scope of the agent's authority if it occurs while the agent is engaged in the duties that the agent was authorized to perform and if the conduct relates to those duties.  But the law requires that if the wrongful act is that of an agent, either the agent and principal, or the principal must be sued because the principal is the responsible party.  Where, as here, the plaintiffs assert the defendant is liable for his acts as an agent, **Memorandum of Law in Response to Defendant's Motion for Summary Judgment at 2,** it is not proper to sue the individual agent, without alleging agency, because the individual is not the responsible party, the principal is.

(emphasis added).

At this point, we simply note that the Memorandum of Law referenced by the trial court does not appear in the record before us.  The complaints do not allege that Mr. Prater was acting as an agent for anyone or any entity.[2]  In his answers, Mr. Prater asserted he did business by and through his corporation, but, as an affirmative defense, Mr. Prater stated that the complaints failed to state a claim because there were no allegations of wrongful conduct against Mr. Prater; that all the allegations were jointly against Mr. Prater and a third-party, Wayne Oliver; and that Mr. Prater did not participate with Mr. Oliver in any wrongful conduct.

It was Mr. Prater's motion for summary judgment that raised the issue whether he could have individual liability because he acted by and through his corporation.  Although the record does not include the memorandum filed in response to the motion, we can presume from the trial court's mention of the argument, as well as the briefs filed in this court, that the plaintiffs argued therein that, even if Mr. Prater had been acting through his corporation, he was an undisclosed agent who could be held personally liable.

---

[1] The trial court noted that in their papers in opposition to summary judgment, the plaintiffs asked to add the corporation as a defendant.  Because this request was not made by proper motion to amend with a proposed amendment, the court determined that it lacked authority to grant the request.

[2] The paragraph identifying the defendant refers to "James F. Prater, individually and/or d/b/a/ Prater Booking & Management."  In his answers to both complaints, Mr. Prater denied that he did business as Prater Booking and Management, stating, "To the contrary, at all times pertinent to this complaint, Prater did business and is doing business by, through, and in the name of his corporation, Prater Enterprises, Inc."

IV. Evidence on Summary Judgment

In support of his motion for summary judgment, Mr. Prater filed his own affidavit, a statement of undisputed facts pursuant to Tenn. R. Civ. P. 56.03,[3] the charter of Prater Enterprises, Inc., a certificate of corporate existence for Prater Enterprises, Inc. authenticated by the Office of the Tennessee Secretary of State, the affidavit of Mr. Oliver, and the affidavit of Donald Ruck.[4]

In response to the motion for summary judgment, Mr. Wise and Mr. Jurgensmeyer responded to the statement of uncontested facts and filed "Late Filed Exhibits to Plaintiffs' Responses to Defendant's Motions for Summary Judgment" which included the affidavit of Mr. Wise and excerpts from the deposition of Mr. Prater.[5]

Mr. Prater testified that he provides, through his corporation, services in the music and entertainment business, including working with new artists to develop them so they can successfully fulfill the requirements of a recording contract if one is offered to them. This process includes a number of activities and areas and is usually a twelve to eighteen month process "to prepare an artist to become a star."

Mr. Prater testified that Mr. Jurgensmeyer did not hire him or his corporation, did not negotiate a fee for his services, and did not pay him or his corporation. Instead, he asserts, Mr. Oliver hired Prater Enterprises to work with Hawke Montana and paid Prater Enterprises $50,000 as a one time fee "to act, in essence, as an interim manager for Mr. Montana and to get him ready for the recording agreement Mr. Oliver was trying to secure for Mr. Montana."

---

[3]The record before us includes a statement of undisputed facts only with regard to Mr. Jurgensmeyer's complaint. The record also contains responses to statements of undisputed facts in both cases, so we can assume statements were filed as to both complaints. Since the responses do not include the substance of the statements to which they respond, however, this court is unaware of the statements.

[4]Mr. Ruck is Mr. Prater's accountant and his affidavit states that has prepared the federal income tax returns for Prater Enterprises since its inception in 1993. His affidavit indicates that he has never known Mr. Prater to do business other than as Prater Enterprises.

[5]On appeal, Mr. Wise and Mr. Jurgensmeyer filed a motion in this court to supplement the record to include the affidavit of Mr. Jurgensmeyer, a letter from Mr. Oliver to Big Sky Entertainment, and a letter from Mr. Oliver to Mr. Wise, that they argued were inadvertently omitted from the technical record by the trial court clerk. We denied that motion because disputes concerning the content of the record on appeal should be submitted to and settled by the trial court. Tenn. R. App. P. 24(e). Subsequent to our denial of that motion, a reply brief filed by Mr. Wise and Mr. Jurgensmeyer states that "the Chancery Court . . . has entered an Order . . . to file a supplemental record [containing the aforementioned documents]." Mr. Wise and Mr. Jurgensmeyer attached these documents to their reply brief. Mr. Prater also attached these documents to his brief in response to the reply brief and addressed the content of the documents in his argument. Because the parties do not dispute that these documents were filed with the trial court and the trial court approved their inclusion in a supplemental record, we will consider the documents in determining whether the grant of summary judgment was appropriate.

Mr. Prater began providing those services until he decided he could not work with Mr. Montana any longer because he had become uncooperative. At that point, according to Mr. Prater, he and Mr. Oliver met with Mr. Jurgensmeyer and informed him they would not work with Mr. Montana anymore, and Mr. Jurgensmeyer agreed. They met a month later, and Mr. Oliver offered to return the money Mr. Jurgensmeyer had invested or to find another artist. Mr. Oliver found another artist, but Mr. Jurgensmeyer did not agree to finance this artist's preparation and demanded that Mr. Oliver return his money. Mr. Prater testified he had agreed with Mr. Oliver to work with the new artist under the same agreement and for the one-time fee he had already been paid. Mr. Prater's affidavit concludes:

> I did not participate in nor do I have any independent knowledge of the financial arrangements between Mr. Oliver and the plaintiff. I never negotiated for or received any payment from Plaintiff and I never received any compensation for my services other than that paid to Prater Enterprises, Inc. by Mr. Oliver.

> The only acts that I performed relevant to these proceedings are the services that I rendered on behalf of Mr. Montana at Mr. Oliver's request. I performed no services for the plaintiff.

> The only involvement of my corporation was to make my services available and to receive the payment from Mr. Oliver.

Mr. Oliver testified by affidavit that Mr. Jurgensmeyer had engaged his services to develop the career of an artist known as Hawke Montana. He further stated that he met with Mr. Jurgensmeyer, Mr. Prater, and Mr. Montana in August of 1995 and shortly thereafter Mr. Jurgensmeyer transferred to him $250,000. "This amount was to pay for my fees and the expenses associated with developing Mr. Montana."

Mr. Oliver also testified that after the August meeting he engaged the services of Mr. Prater to provide interim management services for Mr. Montana while Mr. Oliver worked on securing a recording contract. He agreed to pay Mr. Prater a one-time fee of $50,000 for his services; they anticipated it would take 12 to 18 months to get a recording contract or determine one was not available. Mr. Oliver paid Prater Enterprises, Inc. the entire $50,000 by check soon after he received the funds from Mr. Jurgensmeyer. Mr. Oliver testified that Mr. Prater performed the management services until they decided the arrangement with Mr. Montana was not going to work.

Mr. Prater included most of these statements in his Rule 56 Statement of Undisputed Facts. In response, Mr. Jurgensmeyer disputed a number of them, specifically stating that in August of 1995 he had engaged both Mr. Prater and Mr. Oliver to provide services to prepare Hawke Montana for a record agreement and that the $50,000 fee Mr. Prater received had come from money tendered by Mr. Jurgensmeyer. In addition, Mr. Jurgensmeyer's response stated that Mr. Prater had been present, along with Mr. Oliver, during almost all discussions regarding the monetary arrangement necessary to secure the alleged recording contract.

Neither the affidavit of Mr. Prater nor the affidavit of Mr. Oliver that are included in the record presented to us addresses any of the particular circumstances regarding the arrangement with Mr. Wise. The Statement of Undisputed Facts which is included in the record also does not address any facts specific to Mr. Wise's complaint or allegations. Mr. Wise testified by affidavit that Mr. Prater, along with Mr. Oliver, entered into an oral agreement with him to secure a recording contract. He also testified that Mr. Prater, as well as Mr. Oliver, made oral misrepresentations that a contract had been procured. He also stated that Mr. Prater was present during and participated in almost all conversations regarding the financial arrangements for the recording contract.

Mr. Wise testfied, "At no time prior to the filing of this lawsuit did Defendant hold himself out to me as a corporation." Mr. Jurgensmeyer made the same statement. Mr. Prater does not dispute this assertion.

V.

Plaintiffs sued only Mr. Prater, not his corporation. The issue of whether an agent for a corporation can be individually liable for misrepresentations has been addressed previously. In *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585 (Tenn. Ct. App. 1980), the individuals argued they could not be liable on the contracts of their corporation, but the court found this argument had no application to the plaintiff's claims in tort for fraudulent misrepresentation. *Id.* 608 S.W.21d at 590. Following *Brungard*, we held:

> A corporation acts through its agents. An agent is one who undertakes to transact some business or to manage some affair, for another by authority and on account of the latter, and to render an account of it. *Security Federal Sav. and Loan Ass'n. v. Riviera, Ltd.*, 856 S.W.2d 709, 715 (Tenn. App. 1992). We note that "an agent cannot escape liability for tortious acts, including fraud or misrepresentation, against third persons simply because the agent was acting within the scope of the agency or at the direction of the employer." *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn. App. 1980). . . . If KRI [the corporation] made misrepresentations, some individual or individuals had to make them for it. The complaint in this litigation identifies those individuals as Neely and Davis [officers and directors of the corporation].

*Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 821 (Tenn. Ct. App. 1995).

Thus, an individual may be liable for fraud or misrepresentation even when acting as an agent for a corporation. In *Allied*, the plaintiff had, in an earlier suit, obtained a judgment against the individuals' principal, the corporation. This court found that judgment did not preclude the action against the individuals. "An officer or director of a corporation who commits or participates in the commission of a tort is likewise liable to third parties **regardless of the liability of a corporation**." *Brungard*, 608 S.W.2d at 590-91 (citing *Cooper v. Cordova Sand and Gravel Co., Inc.*, 485 S.W.2d 261, (Tenn. Ct. App. 1971)) (emphasis added).

Obviously, a party who makes misrepresentations when not acting as an agent for a corporation or other entity may be liable personally.

With regard to the breach of contract claim, Mr. Jurgensmeyer and Mr. Wise claim they had an agreement with Mr. Prater. Mr. Prater asserts he conducted any activities with regard to the plaintiffs only through his corporation, but also asserts there was no agreement with the plaintiffs on the part of either his corporation or himself individually.

If a contract existed, the question of who was the contracting party is answered by the circumstances surrounding the making of the agreement. *See Anderson v. Surbin*, 740 S.W.2d 417 (Tenn. Ct. App. 1987). In *Anderson*, a homeowner entered into an agreement for substantial renovations to his home. When the homeowner sued the contractor, naming him individually and also his corporate entity, judgment was awarded against the contractor individually. On appeal, the contractor asserted that the trial court should not have pierced the corporate veil or disregarded the corporate entity. This court found this argument to be irrelevant because questions of piercing the corporate veil arise only where the corporation has been found liable and the trial court had found no corporate liability, but instead had found the homeowner's dealings had been with the defendant in his personal capacity. The court then addressed whether the evidence preponderated against that finding, and held:

> Plaintiff testified that Durbin [the contractor] never orally represented himself as having any corporate status and that he never knew of such alleged status until after the parties had their dispute over the quality of the workmanship and alleged breach by Durbin. The defendant Durbin in his testimony did not contradict the plaintiff's testimony that he, Durbin, never mentioned either before or during the negotiations that he was an agent for a corporation. Therefore, as we see matters, in order for appellant to prevail on this point, we must find that other proof, either written or oral, preponderates in favor of a finding that plaintiff knew or was bound to know that he was dealing with Durbin as an agent for a corporation at the time the agreement was struck. This is so because the rule holds that if an agent fails to reveal his true status as agent, he is bound as principal. *Louisville & Nashville R. Co. v. McKay & Morgan*, 133 Tenn. 503, 182 S.W. 585 (1916).

*Anderson*, 740 S.W.2d at 418.

In *Anderson*, the relevant facts were that the defendant had a charter for his corporation, but the actual corporate name appeared nowhere else in the documentary evidence. The written proposal for the renovation work included the word "Inc." in two places, but also could be read to be from the individual. The court determined the proposal was submitted by the individual with no qualifying provisions. In addition, the sign placed by the contractor in the home's front yard did not show any corporate entity, and none of the checks given by the homeowner bore "any hint of a deposit to a corporate account" but were made out to the individual.

Based on these circumstances, this court found that the evidence preponderated in favor of the trial court's finding that the homeowner contracted with the defendant in his individual capacity.

As the *Anderson* court also stated, failure to disclose one's status as an agent can result in individual liability.

> Tennessee follows the venerable common law rule that an agent for an undisclosed principal is personally liable on a contract. *Anderson v. Durbin*, 740 S.W.2d 417, 418 (Tenn. Ct. App. 1987). Restatement (Second) of Agency, § 322 states, in part: "An agent purporting to act upon his own account, but in fact making a contract on account of an undisclosed principal, is a party to the contract."
>
>> And an agent who makes a contract in his own name, without disclosing the identity of his principal, renders himself personally liable, even though the person with whom he deals knows that he is acting as agent, unless it affirmatively appears that it was the mutual intention of the parties to the contract that the agent should not be bound.
>
> *Siler v. Perkins*, 149 S.W. 1060, 1061, 126 Tenn. 380, 387 (1912). A party who deals with such an agent may sue either the principal or the agent, but not both. *Holt v. American Progressive Life Ins. Co.*, 731 S.W.2d 923, 925 (Tenn. Ct. App. 1987).

*Certain Interested Underwriters at Lloyd's London, England v. Layne*, 26 F.3d 39, 43-44 (6th Cir. 1994).

## VI. Standard of Review

The standards for reviewing summary judgments on appeal are well settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a motion for summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto, Ins. Co.*, 49 S.W.3d 265 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Goodloe v. State*, 36 S.W.3d 62, 65 (Tenn. 2001).

Summary judgments enjoy no presumption of correctness on appeal. *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51

(Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

The moving party has the burden of proving that its motion satisfies the requirements of Rule 56, including its entitlement to judgment as a matter of law. *Staples v. CBL Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Carvell v. Bottoms*, 900 S.W.2d 23, 25 (Tenn. 1995); *Jones v. City of Johnson City*, 917 S.W.2d 687, 689 (Tenn. Ct. App. 1995) *overruled on other grounds by Hawks v. City of Westmoreland*, 960 S.W.2d 10 (Tenn. 1997). When a party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party, in this case Mr. Wise and Mr. Jurgensmeyer, to set forth specific facts which must be resolved by the trier of fact. *Staples,* 15 S.W.3d at 88; *Byrd*, 847 S.W2d at 215.

> To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Staples*, 15 S.W.3d at 88-89.

The nonmoving party may carry its burden by: "(1) pointing to evidence either overlooked or ignored by the moving party that creates a material factual dispute, (2) by rehabilitating the evidence attacked in the moving party's papers, (3) by producing additional evidence showing the existence of a genuine issue for trial, or (4) submitting an affidavit explaining why further discovery is necessary as provided for in Tenn. R. Civ. P. 56.06." *Staples*, 15 S.W.3d at 89 n.2 (citing *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

This court's role in review of the grant of summary judgment is to review the record and determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Staples*, 15 S.W.3d at 88. Our perspective is the same as that of the trial court. *Gonzales v. Alman Const. Co.*, 857 S.W.2d 42, 44-45 (Tenn. Ct. App. 1993). Therefore, we must decide anew if the movant is entitled to summary judgment; that is, whether the material facts are not in dispute and conclusively show that Mr. Prater is entitled to judgment.

## VII. Conclusion

The trial court determined there was no factual dispute as to Mr. Prater's acting in his individual or corporate capacity, stating, "The record before the Court, including the affidavit of Mr. Prater, establishes that all action taken by the defendant was in his capacity as an agent/employee of Prater Enterprises, Inc. . . ." From our review of the record, we conclude there are disputes of fact as to whether Mr. Prater participated in the arrangements with Mr. Jurgensmeyer and Mr. Wise as an individual or as an agent of his apparently solely-owned corporation.

Whether he was acting individually or on behalf of his corporation is irrelevant to his possible liability for fraud or negligent misrepresentation. Thus, even if he were acting as an agent of the corporation, he could nonetheless be held personally responsible for any misrepresentations. While we disagree with the trial court as to whether Mr. Prater's assertions regarding his custom of always conducting business through his corporation constitute undisputed proof that he was acting as an agent of his corporation, we also conclude that even if we agreed with that determination, Mr. Prater was not entitled to judgment because he could still be liable on the tort claims.

Similarly, even if Mr. Prater was acting as an agent for his corporation, he could also be held liable on the breach of contract claim because he would have been acting as an undisclosed agent. Mr. Prater does not dispute that he never informed the plaintiffs that he was acting on behalf of the corporation. While we disagree with the trial court's conclusion that no material disputes exist as to Mr. Prater's acting as an agent of the corporation, again that conclusion is not dispositive because he could nonetheless be held individually liable on the breach of contract claims.

On appeal, Mr. Prater asserts that the summary judgment was appropriate because the plaintiffs failed to come forward in opposition to the motion with proof that there was a contractual relationship between each of them and Mr. Prater. Obviously, a party claiming breach of contract must prove the existence of a contract. Mr. Prater testified that he never had a contractual relationship with either plaintiff and that his only business relationship herein was with Mr. Oliver who hired and employed him. However, he admits to taking part in the initial meetings and in later meetings and conversations. Of course, the plaintiffs claim an oral agreement whereby Mr. Prater, along with Mr. Oliver, agreed to secure a recording contract in exchange for the money paid by the plaintiffs.

Thus, it appears to us that the question of whether a contract existed is a dispute of fact and that the "proof" submitted herein consists of contradictory sworn statements by the opposing parties as to the existence of oral agreements. Consequently, we conclude that there are disputed facts material to whether an agreement existed upon which the breach of contract claim can be predicated.

As to the claims of negligent misrepresentation, a plaintiff must prove:

-12-

(1) that the defendant was acting in the course of its business, profession, or employment, or in a transaction in which it had a pecuniary (as opposed to gratuitous) interest;

(2) that the defendant supplied faulty information meant to guide others in their business transactions;

(3) that the defendant failed to exercise reasonable care in obtaining or communicating the information; and

(4) that the plaintiff justifiably relied upon the information provided by the defendant.

*Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997); *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 130 (Tenn. 1995); *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991).

Fraud, on the other hand, is established by proof of a false representation of an existing or material fact made knowingly, without belief in its truth, or recklessly. The plaintiff must show that he or she reasonably relied on the misrepresentation and suffered some damage as a result of that reliance on the false representation. *Pusser v. Gordon*, 684 S.W.2d 639, 641 (Tenn. Ct. App. 1984).

Mr. Prater did not, in his statement of undisputed facts or in his affidavit, specifically assert that he never made representations to the plaintiffs that contracts, including the description of the record company and producer involved, existed. He simply took the position that his only involvement was to make his services available through his corporation to Mr. Oliver and to receive payment from Mr. Oliver. While the letters included in the record reflect misrepresentations only by Mr. Oliver, Mr. Jurgensmeyer and Mr. Oliver alleged oral misrepresentations by Mr. Prater at the meetings or other communications where he took part.

Based upon the record before us, we conclude that the defendant, Mr. Prater, is not entitled to summary judgment because the undisputed facts do not establish that he is entitled to such judgment as a matter of law. Consequently, we reverse the decision of the trial court and remand for further proceedings. Costs are taxed to the appellee, Mr. Prater.

_____
PATRICIA J. COTTRELL, JUDGE