# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 25, 2014 Session

## MELISSA L. TAYLOR ET AL. v. JAMES T. GEORGE, II, ET AL.

### Appeal from the Chancery Court for Knox County
### No. 175472-1    John F. Weaver, Chancellor

_____

### No. E2014-00608-COA-R3-CV-MARCH 16, 2015

_____

The plaintiff filed this action seeking to enforce a judgment for child support and alimony entered in South Carolina and subsequently domesticated in Tennessee. One defendant serves as the trustee of a testamentary trust while the other defendant is a trust beneficiary and the judgment debtor. Before this action proceeded to trial, the trustee distributed all of the respective trust assets to the beneficiary/debtor. As the trial court determined that there was insufficient evidence of a fraudulent conveyance or civil conspiracy, it dismissed the plaintiff's claims against the trustee. The trial court upheld the plaintiff's judgment against the beneficiary/debtor and awarded pre- and post-judgment interest thereon. The plaintiff appealed. Discerning no error, we affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Jonathan Swann Taylor and Courtney R. Houpt, Knoxville, Tennessee, for the appellant, Melissa L. Taylor.

James T. George, II, Knoxville, Tennessee, Pro Se.

Theodore Kern, Knoxville, Tennessee, for the appellee, Tessa G. Dunn.

**OPINION**

## I. Factual and Procedural Background

The plaintiff, Melissa L. Taylor, was formerly married to the defendant, James T. George, II. Two children were born of the marriage, Alexa and Arianna, both of whom are now adults. Ms. Taylor and Mr. George divorced in 2002 in South Carolina. As part of their divorce proceedings, Ms. Taylor and Mr. George entered into a Final Order of Separate Maintenance and Support, wherein Mr. George agreed that he owed Ms. Taylor $80,000 in unpaid spousal and child support.

Following entry of the divorce, Ms. Taylor relocated with the children to Knoxville. Mr. George subsequently moved to Knoxville as well. In February 2004, Ms. Taylor sought to register the South Carolina Final Order in Knox County, Tennessee. Acting on her petition, the Knox County Circuit Court entered an order finding that the Final Order of Separate Maintenance and Support was entitled to full faith and credit in Tennessee. Mr. George did not, however, pay any amount towards satisfaction of the $80,000 judgment.

In 2007, Mr. George's mother, Gloria George, died in Maryland. Her will provided that separate trusts would be established for Alexa and Arianna to be funded with $50,000 each. The will further provided:

a.      If my son is then living, and if he has an obligation to make any payment to his former wife, Melissa L. George, pursuant to the Final Order of Separate Maintenance and Support dated November 27, 2001 and the Property and Separation Agreement dated November 27, 2001, and if Melissa L. George shall execute a receipt and release acknowledging satisfaction of said obligation in part (in the case of my son's older living child) or in whole (in the case of my son's younger living child), then:

      (1)    Upon such child attaining age eighteen (18), my Trustee shall distribute Forty Thousand Dollars ($40,000) from such child's trust to Melissa L. George for the express purpose of providing for such child's college, professional, and/or post-graduate education.

      (2)    With respect to the balance of such child's trust, my Trustee may expend such amounts of the net income, and to the extent the net income is insufficient then of the

principal, of the trust as is necessary or appropriate, in my Trustee's sole and absolute discretion, for the college, professional, and/or post-graduate education of such child.

The will also provided for a trust fund benefitting Mr. George. Mr. George's sister, Tessa Dunn, was named in the testamentary instrument as personal representative and trustee of the trusts. The will also provided that Ms. Dunn, as trustee, could expend for Mr. George's benefit "such amounts of the net income, and to the extent the net income is insufficient then of the principal, of the trust as is necessary or appropriate, in my Trustee's sole and absolute discretion." Further, Ms. Dunn was directed by the will to make all trust payments directly to the respective beneficiaries.

While Ms. Taylor engaged in numerous discussions with Mr. George regarding the provisions of the will, Ms. Taylor was eventually told that the will's provisions tied payment of Ms. Taylor's judgment to her children's college trust funds. Ms. Taylor vehemently objected to the use of the college trust funds to satisfy her judgment against Mr. George. At some point during these discussions, Ms. Taylor offered to settle the judgment against Mr. George for $70,000, which offer Mr. George accepted. In return, Mr. George asked Ms. Taylor to execute a release of the $80,000 judgment, which she did. However, when Mr. George delivered the payment of $70,000 to Ms. Taylor's husband, attorney Dudley Taylor, Ms. Taylor learned that the checks had been written by Ms. Dunn from Alexa's and Arianna's respective college trust funds. When Ms. Taylor asked Mr. George to tender the release in exchange for return of the checks, Mr. George did not respond.

Ms. Taylor subsequently filed the instant declaratory judgment action on June 30, 2009, requesting that the trial court declare the rights and liabilities of the parties regarding this matter. Mr. George and Ms. Dunn were named as defendants.[1] For relief sought, Ms. Taylor requested that the parties' $70,000 settlement be set aside. Ms. Taylor further petitioned the court to direct Ms. Dunn, as trustee of Mr. George's trust, to pay the $80,000 judgment from his trust funds. Ms. Taylor also sought a finding by the court that Ms. Dunn had violated her fiduciary duties as trustee of the college trust funds for Alexa and Arianna. Ms. Taylor initially deposited the checks written on her children's trust funds into an escrow account. Following the filing of the instant action, she deposited those funds into the registry of the court.

---

[1] Ms. Taylor initially filed this action on behalf of Alexa and Arianna as well as in her individual capacity. Alexa and Arianna became adults during the pendency of the action, and they agreed that their claims against Ms. Dunn were satisfied when the "settlement" funds were restored to their respective college trust funds. Accordingly, Alexa's and Arianna's claims against Ms. Dunn were dismissed.

-3-

Ms. Dunn filed a motion to dismiss, asserting that the trial court lacked personal jurisdiction over her because of her North Carolina residence. Mr. George similarly filed a motion to dismiss, contending that Ms. Taylor's complaint failed to state a claim upon which relief could be granted. Upon consideration, the trial court denied both motions. Ms. Taylor amended her complaint to include a claim of civil conspiracy, alleging that Mr. George and Ms. Dunn conspired to defraud Ms. Taylor's children by disbursing their college trust fund monies to satisfy the judgment owed by Mr. George. On August 31, 2012, the parties entered into an agreed order allowing the funds being held by the court to be released to Ms. Dunn as trustee so that the monies could be restored to the college trust funds of Alexa and Arianna.

Ms. Taylor subsequently sought a second amendment to her complaint, presenting a claim that, despite their knowledge of Ms. Taylor's $80,000 judgment against Mr. George, Ms. Dunn and Mr. George had disclosed that all the funds in Mr. George's trust were depleted. In furtherance of the claim, Ms. Taylor alleged that Ms. Dunn had conspired with Mr. George and inappropriately disbursed money to him in order to defeat Ms. Taylor's claim to those funds.

A trial on the merits was conducted in this matter over the course of four days: March 4, March 5, April 15, and July 24, 2013. At the conclusion of trial, Ms. Taylor filed a motion seeking to amend the pleadings to conform to the evidence and asserting that the parties had tried the issue of enforceability of the $70,000 settlement by express or implied consent. Ms. Taylor thus sought to enforce this settlement as an alternative remedy.

Having taken the case under advisement, the trial court issued a memorandum opinion on February 28, 2014, elucidating extensive findings regarding the issues presented. In its memorandum opinion, the trial court, *inter alia*, found that the South Carolina court had entered a Final Order establishing a judgment against Mr. George for unpaid support totaling $80,000 and that the Fourth Circuit Court had domesticated and adopted the Final Order of the South Carolina court in Tennessee. In its order, the Fourth Circuit Court had granted a sixty-day stay of enforcement based on Mr. George's representations that he wished to attack the validity of the underlying order. In the instant action, the trial court noted that this sixty-day period had long since expired. The court also found that the evidence established the defendants' recognition of the $80,000 judgment and that the judgment represented unpaid child and spousal support.

Regarding other issues joined, the trial court determined that Mr. George and Ms. Dunn attempted to use the children's trust funds to satisfy the judgment against Mr. George. As the court found, Ms. Taylor and Mr. George had entered into a settlement agreement whereby Ms. Taylor agreed to accept the reduced amount of $70,000; however, she had made

it clear that she would not accept payment from the children's funds to satisfy this obligation. According to Ms. Taylor, any payment would have to be derived from Mr. George's trust funds.

With reference to the payment made, the court specifically found that while Mr. George had tendered the checks, it was later discovered that these checks were drawn on the children's trusts. Consequently, Ms. Taylor thereafter deposited the funds with the court and sought to invalidate the settlement. Ms. Taylor's attorney later proffered that his client wanted the original settlement to be recognized but with the funds to be paid out of Mr. George's trust. In support, Ms. Taylor filed a motion seeking to amend the pleadings to conform to the evidence at trial. The court acknowledged that while Mr. George requested in his answer that the settlement be enforced, Ms. Dunn sought through her answer a dismissal of the claim for invalidation of the settlement. However, the court determined that Ms. Taylor's children had attained the age of majority and were not pursuing claims to invalidate the settlement because the funds had been restored to their trusts. By reason of the action's procedural posture, the court thus observed that "plaintiff and defendants have come full circle."

Relative to the claims against Ms. Dunn, the trial court found that she had participated with Mr. George to shield his trust funds from the payment of his $80,000 spousal and child support obligation and judgment. Moreover, the court noted that Ms. Dunn was aware of the judgment from the inception of the administration of her mother's estate because her mother's will specifically addressed it.

In further support of its adjudication of issues presented, the court found that on July 24, 2008, Ms. Taylor sent Ms. Dunn a letter, inquiring as to the children's interests in Ms. George's estate. Mr. George initially informed Ms. Taylor that although he was not an estate beneficiary, the children were. Mr. George later told Ms. Taylor that his unpaid judgment would be paid from his inheritance. Meanwhile, Ms. Dunn wrote to Ms. Taylor on September 4, 2008, enclosing a purported copy of a page from Ms. George's will pertaining to the children, but the page proved false. The court determined that the actual will conditioned the trustee's payment of a child's trust funds to Ms. Taylor upon Ms. Taylor's execution of a "receipt and release acknowledging satisfaction of said obligation." Absent execution of the release, as the court concluded, Ms. Dunn maintained no authority to use the children's funds in connection with the satisfaction of Mr. George's unpaid obligation.

According to the trial court, while Ms. Taylor was a judgment creditor, Ms. Dunn and Mr. George sought to conceal Mr. George's interest in his trust to prevent Ms. Taylor from reaching the trust funds to satisfy the judgment. The court concluded that Ms. Dunn had conspired with Mr. George to this effect. As the court determined, at the time Ms. Dunn was

served with the complaint, she was holding no less than $85,833 in trust for Mr. George. During the next year, Ms. Dunn made accelerated disbursements to Mr. George, depleting his entire interest in the trust. As found by the court, Ms. Dunn's trusteeship had served no purpose other than to hinder creditors from reaching Mr. George's interest in his trust. The court also found that Ms. Dunn afforded Mr. George control over his trust funds inasmuch as she provided him blank signed checks for use. She also deposited $35,000 into his account without knowledge of his intentions concerning the money.

Relative to the issue of personal jurisdiction, the trial court concluded that Ms. Dunn had submitted herself to the jurisdiction of this court by conspiring with Mr. George to keep his trust funds from Ms. Taylor and dissipating trust assets by sending his payments to Tennessee. The court also concluded, however, that the evidence did not sustain a fraudulent conveyance action because all transfers were made to Mr. George with no evidence indicating improper or extraordinary use of the funds by him.

In addition, the trial court found that although Ms. Taylor could have either filed a suit in aid of a judgment or a bill in discovery, she had failed to do so. Instead, the trust funds at issue were held outside the state of Tennessee with no lien or garnishment placed against them. Therefore, the court determined that Ms. Taylor's filing suit in Tennessee did not serve to freeze the assets held in the out-of-state trust. While monies were disbursed to Mr. George in a manner providing him control of the funds, his use of the funds was not shown to have been for any improper or extraordinary purpose.

The trial court ultimately concluded that Ms. Taylor was entitled to a declaratory judgment establishing that Mr. George owed her $80,000. The court further ruled that Ms. Taylor could institute an appropriate action to enforce said judgment. In determining that the original agreement between the parties provided that the unpaid support obligation was to be without interest, the court explained that Ms. Taylor was entitled to an award of prejudgment interest only from the date of the filing of her complaint.

The trial court dismissed any claim concerning the $70,000 settlement by determining that Ms. Taylor had no entitlement to the children's trust funds and that any claims based on same had been settled by the children. Moreover, the court dismissed all claims against Ms. Dunn. The trial court granted Ms. Taylor a final judgment against Mr. George in the amount of $80,000 plus pre- and post- judgment interest. Upon motion filed pursuant to Tennessee Rule of Civil Procedure 59, the trial court subsequently entered an order amending its final judgment to clarify that Ms. Taylor's motion to amend the pleadings to conform to the evidence was denied. Ms. Taylor timely appealed.

## II. Issues Presented

Ms. Taylor presents the following issues for our review, which we have restated slightly:

1.      Whether the trial court erred in failing to hold Ms. Dunn personally liable for payment of Ms. Taylor's judgment against Mr. George by reason of her collaboration with Mr. George to dissipate all of the funds in his trust.

2.      Whether the trial court erred in its denial of Ms. Taylor's motion to amend the pleadings to conform to the evidence.

3.      If the trial court erred in denying the motion to amend, whether there was an enforceable settlement agreement such that Ms. Dunn should be held personally liable as a result of dissipating the funds rather than satisfying the settlement agreement.

Mr. George presents the following additional issue:

4.      Whether the trial court erred in the assessment of $40,000 in interest on the judgment.

## III. Standard of Review

In this non-jury case, our review is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Tenn. R. App. P. 13(d). We must honor this presumption unless we find that the evidence preponderates against the trial court's findings. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d); *Estate of French v. Stratford House*, 333 S.W.3d 546, 554 (Tenn. 2011). When interpreting statutes, "[o]ur primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope." *Estate of French*, 333 S.W.3d at 554 (citing *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002)).

As our Supreme Court has further instructed regarding statutory construction:

[T]here are a number of principles of statutory construction, among which is

-7-

the most basic rule of statutory construction: "'to ascertain and give effect to the intention and purpose of the legislature.'" *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000) (quoting *Carson Creek Vacation Resorts, Inc. v. State Dep't. of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993)). However, the court must ascertain the intent "without unduly restricting or expanding the statute's coverage beyond its intended scope." *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993). *See also Gleaves*, 15 S.W.3d at 802; *Worley v. Weigels, Inc.*, 919 S.W.2d 589, 593 (Tenn. 1996); *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). "The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced or subtle interpretation that would limit or extend the statute's application." *State v. Blackstock*, 19 S.W.3d 200, 210 (Tenn. 2000) (citing *State v. Pettus*, 986 S.W.2d 540, 544 (Tenn. 1999)).

Courts are not authorized "to alter or amend a statute." *Gleaves*, 15 S.W.3d at 803. The reasonableness of a statute may not be questioned by a court, and a court may not substitute its own policy judgments for those of the legislature. *Id.* (citing *BellSouth Telecomm., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997)). "[C]ourts must 'presume that the legislature says in a statute what it means and means in a statute what it says there.'" *Id.* (quoting *BellSouth Telecomm.*, Inc., 972 S.W.2d at 673).

*Mooney v. Sneed*, 30 S.W.3d 304, 306-07 (Tenn. 2000).

## IV. Ms. Dunn's Personal Liability

Ms. Taylor contends that the trial court erred in failing to hold Ms. Dunn personally liable in this matter because, according to Ms. Taylor, Ms. Dunn conspired and collaborated with Mr. George to deplete his trust fund in order to prevent Ms. Taylor from collecting her judgment. Ms. Taylor's claim is based on two separate theories: (1) that Mr. George, acting in concert with Ms. Dunn, fraudulently conveyed away his trust assets to thwart Ms. Taylor's ability to collect thereon as a judgment creditor and (2) that Mr. George and Ms. Dunn conspired to defraud Ms. Taylor and prevent her from collecting her judgment against funds maintained in Mr. George's trust.

### A. Fraudulent Conveyance

By amended complaint, Ms. Taylor asserted a claim pursuant to the Uniform Fraudulent Transfer Act, codified at Tennessee Code Annotated § 66-3-301, *et seq.* Ms. Taylor claimed that Mr. George and Ms. Dunn worked together to convey and deplete his

trust assets so that Ms. Taylor would be unable to collect her judgment against his trust funds. The pertinent section of the Act provides:

> (a)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1)  With actual intent to hinder, delay, or defraud any creditor of the debtor; . . . .

Tenn. Code Ann. § 66-3-305. Ms. Taylor posits that because the trial court found that Ms. Dunn gave Mr. George control of the trust and assisted him in transferring and depleting the trust assets before Ms. Taylor could enforce her judgment, those transfers should be deemed to be fraudulent pursuant to this statutory provision.

The trial court found no violation of the Uniform Fraudulent Transfer Act, however, because the transfers were made <u>to</u> Mr. George and not <u>by</u> Mr. George. We agree with the trial court on this issue. The statute specifically references "transfer[s] made . . . by a debtor" and contains no provision for transfers made to a debtor by a trustee. The Act defines a debtor as "a person who is liable on a claim." *See* Tenn. Code Ann. § 66-3-302 (6). Ms. Dunn was not the debtor herein as she maintained no liability to Ms. Taylor. Instead, she was simply trustee of Mr. George's trust, making disbursements to him from the trust pursuant to the authority granted to her by Ms. George's last will and testament.

Ms. Taylor contends that the Act provides authority for extending its application to Ms. Dunn because the definition of a "transfer" includes "every mode, <u>direct or indirect</u>, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, . . . ." *See* Tenn. Code Ann. § 66-3-302 (12) (emphasis added). Ms. Taylor argues that because Ms. Dunn allowed Mr. George to exert control over the assets in his trust, the funds were indirectly transferred by him in concert with Ms. Dunn. Ms. Taylor provides no authority for such an interpretation of the statute, however, and this Court has likewise located none. As previously stated, "[t]he legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced or subtle interpretation that would limit or extend the statute's application." *See Mooney*, 30 S.W.3d at 306 (quoting *State v. Blackstock*, 19 S.W.3d 200, 210 (Tenn. 2000)). We determine that the statute clearly and unambiguously provides that only transfers made by a debtor may be found to be fraudulently conveyed. In this matter, the assets were transferred by Ms. Dunn, as trustee, to the debtor, Mr. George. Such action does not invoke application of the statutory provisions of Tennessee Code Annotated § 66-3-305. We

therefore conclude that the trial court properly found that there was no evidence of a fraudulent conveyance in the instant case.

## B. Conspiracy to Defraud

Ms. Taylor also claims that Ms. Dunn and Mr. George entered into a conspiracy to defraud her by their actions resulting in the dissipation of Mr. George's trust assets so that Ms. Taylor would be unable to collect her judgment against the trust. Ms. Taylor contends that such a conspiracy claim requires a "combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff," citing *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). On this issue, the trial court determined that as Ms. Taylor had not filed a lien or any other action serving to "freeze" the assets of the out-of-state trust, Ms. Dunn had done nothing unlawful by making transfers to Mr. George of his trust assets. Thus, the court impliedly found that there was no underlying tort or wrongful act.

As this Court has previously elucidated regarding conspiracy to defraud:

As defined in *Dale v. Thomas H. Temple Co.*, 186 Tenn. 69, 208 S.W.2d 344 (Tenn. 1948), "[a] 'conspiracy to defraud' on the part of two or more persons means a common purpose, supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and that each has the understanding that the other has that purpose." 208 S.W.2d at 353-354. Having determined that plaintiff's actual knowledge precludes her recovery for fraud, we hold that the plaintiff may not recover for conspiracy to defraud when fraud cannot be established.

As stated in 15A C.J.S. Conspiracy, § 9:

A mere conspiracy to commit a fraud is never of itself a cause of action; it must be proved that there was a conspiracy to defraud and a participation in the fraudulent purpose, either in the scheme or in its execution, which worked injury as a proximate consequence. It is the civil wrong resulting in damage and not the conspiracy which constitutes the cause of action for conspiracy to defraud.

*Pusser v. Gordon*, 684 S.W.2d 639, 642 (Tenn. Ct. App. 1984); *see also Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001) (recognizing that a conspiracy to

defraud claim requires underlying demonstration of fraud); *Stanfill v. Hardney*, No. M2004-02768-COA-R3-CV, 2007 WL 2827498 at *7 (Tenn. Ct. App. Sept. 27, 2007) (holding that a conspiracy claim requires showing of commission of tortious or wrongful act).

In the case at bar, the evidence supported the trial court's finding that Ms. Dunn and Mr. George did act in concert and conspire to deplete Mr. George's trust assets so that Ms. Taylor would be unable to collect her judgment against the trust. As the trial court also properly found, however, there was no proof of an underlying tortious or wrongful act that would support Ms. Taylor's conspiracy claim. The will provided Ms. Dunn, as trustee, discretion to make disbursements of Mr. George's trust fund assets. Even though Ms. Dunn was aware of Ms. Taylor's unpaid judgment, Ms. Dunn was not violating a court order or lien or otherwise acting in a fraudulent or tortious manner by disbursing trust fund assets to Mr. George. By transferring funds to Mr. George, Ms. Dunn initiated actions that she was lawfully entitled to take as trustee. The fact that Ms. Dunn's actions resulted in depletion of the trust assets before Ms. Taylor could enforce her judgment against the trust does not render Ms. Dunn's actions fraudulent or tortious. *See, e.g., Burton v. Hardwood Pallets, Inc.*, No. E2001-00547-COA-R3-CV, 2001 WL 1589162 at *5 (Tenn. Ct. App. Apr. 29, 2002) (holding that there was no fraudulent conduct where a defendant creditor's lawful actions to collect a debt resulted in an unsecured creditor's debt going unsatisfied). Therefore, without the demonstration of the commission of a tortious or wrongful act by Ms. Dunn, there can be no cognizable claim of civil conspiracy. We determine that the trial court properly dismissed Ms. Taylor's claims against Ms. Dunn in this matter.

## V. Motion to Amend Pleadings

Ms. Taylor's principal brief on appeal contends that the trial court erred in failing to grant her motion to amend the pleadings to conform to the evidence so as to allow her to pursue a claim that the alleged $70,000 settlement between the parties should be enforced. Ms. Taylor asserts that the claim regarding enforceability of the settlement agreement was tried by the express or implied consent of the parties. In her reply brief, however, Ms. Taylor purports to abandon this issue. Moreover, following a thorough review of the transcript in this case, we agree with the trial court's determination that Ms. Taylor's counsel represented at trial that Ms. Taylor would not pursue this claim and further that the defendants did not consent to try this claim.

At the outset of the hearing in the matter, the trial court conducted a lengthy on-the-record discussion with the parties' attorneys regarding the claims that would be tried. Ms. Taylor's counsel was questioned at great length regarding whether Ms. Taylor sought to assert any claim based on the purported $70,000 settlement agreement or whether she was seeking to enforce the $80,000 judgment for unpaid child and spousal support. Ms. Taylor's

counsel repeatedly represented that Ms. Taylor was not seeking to enforce the settlement agreement. Although the facts surrounding the settlement negotiations and the history of the parties' positions were delved into at trial, it is abundantly clear that Ms. Taylor consistently sought to enforce her $80,000 judgment against Mr. George and Ms. Dunn rather than seeking to enforce the $70,000 settlement. While Ms. Taylor's counsel maintained that the $80,000 judgment was the basis of Ms. Taylor's claim, the trial advanced accordingly. As such, the parties did not expressly or impliedly try the issue of the enforceability of the $70,000 settlement. The trial court properly denied Ms. Taylor's motion seeking to amend the pleadings to assert this claim. As Ms. Taylor's issue regarding the $70,000 settlement was waived by her counsel at trial and abandoned on appeal, it is now moot.

## VI. Interest on the Judgment

In determining that Ms. Taylor maintained an enforceable judgment against Mr. George for $80,000 in unpaid child and spousal support, which was not subject to modification, the trial court specifically stated:

> However, under the separation and settlement agreement, the obligation was without interest. Therefore, the plaintiff Taylor is entitled to pre-judgment interest only from the date of the filing of her complaint. Also, the obligation of $80,000 is not apportioned between child support and spousal support. Consequently, interest will not be allowed at the higher rate for child support but at the rate of 10% per annum for prejudgment interest and at the rate provided by Tenn. Code Ann. § 47-14-121 for post judgment interest.

The underlying order of the South Carolina court provides:

> The parties entered into a Consent <u>Pendente Lite</u> Order and Order Sealing Record dated August 2, 2000. The Consent Order provided in part that the HUSBAND would pay the WIFE $5000 a month in unallocated support, commencing August 1, 2000. The HUSBAND has not made any <u>pendente lite</u> unallocated support payments to the WIFE. Accordingly, there is an arrearage in the amount of $80,000. The parties agree that the HUSBAND owes the WIFE $80,000 in unpaid unallocated support payments. The HUSBAND agrees to enter into a confession of judgment which shall be held by the WIFE's attorney in escrow pending a possible reconciliation between the parties. The $80,000 shall not accrue interest. In the event that the attempt at reconciliation is unsuccessful, or upon a future separation of the parties after a successful reconciliation, the WIFE may instruct her attorney in writing of the unsuccessful reconciliation attempt or physical separation of the parties

and the WIFE's attorney may record the confession of judgment. Both parties agree that the $80,000 represents unpaid and unallocated support owed to the WIFE by the HUSBAND and that said $80,000 shall be nondischargeable in any future bankruptcy by the HUSBAND as it represents unpaid spousal and child support.

Mr. George contends that the trial court's assessment of interest on the $80,000 judgment was erroneous due to the language in the above provision stating that the "$80,000 shall not accrue interest." Although it is unclear whether the intent of the parties' agreement was that interest not accrue during the period of attempted reconciliation or at any time following, such language is not dispositive of this issue. The parties' agreement was incorporated into a judgment entered by the South Carolina court, which was later recognized and domesticated as an enforceable judgment in the Tennessee court.

Tennessee Code Annotated § 47-14-123 provides that prejudgment interest "may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum . . . ." Our Supreme Court has explained:

> An award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion. This standard of review clearly vests the trial court with considerable deference in the prejudgment interest decision. Generally stated, the abuse of discretion standard does not authorize an appellate court to merely substitute its judgment for that of the trial court. Thus, in cases where the evidence supports the trial court's decision, no abuse of discretion is found.

> Several principles guide trial courts in exercising their discretion to award or deny prejudgment interest. Foremost are the principles of equity. Tenn. Code Ann. § 47-14-123. Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing.

*Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998) (internal citations omitted). As this Court further recognized regarding prejudgment interest:

> Parties who have been wrongfully deprived of money have been damaged in two ways. First, they have been damaged because they have not received the money to which they are entitled. Second, they have been damaged because they have been deprived of the use of that money from the time they should have received it until the date of judgment. Awards of pre-judgment interest are intended to address the second type of damage. They are based on the recognition that a party is damaged by being forced to forego the use of its money over time.
>
> * * *
>
> As we construe the *Myint* decision, the Tennessee Supreme Court has shifted the balance to favor awarding prejudgment interest whenever doing so will more fully compensate plaintiffs for the loss of use of their funds. Fairness will, in almost all cases, require that a successful plaintiff be fully compensated by the defendant for all losses caused by the defendant, including the loss of use of money the plaintiff should have received. That is not to say that trial courts must grant prejudgment interest in absolutely every case. Prejudgment interest may at times be inappropriate such as (1) when the party seeking prejudgment interest has been so inexcusably dilatory in pursuing a claim that consideration of a claim based on loss of use of the money would have little weight, (2) when the party seeking prejudgment interest has unreasonably delayed the proceedings after suit was filed, or (3) when the party seeking prejudgment interest has already been otherwise compensated for the lost time value of its money.

*Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 82 (Tenn. Ct. App. 2000) (internal citations omitted).

Having fully reviewed the evidence and considered the equities in this matter, we determine that the trial court did not abuse its discretion by awarding Ms. Taylor prejudgment interest. As our Supreme Court has explained, "[a] court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Ms. Taylor received an $80,000 judgment against Mr. George in South Carolina in 2002. She subsequently petitioned for that judgment to be domesticated in Tennessee through the Knox County Fourth Circuit Court. As Ms. Taylor later filed the instant action seeking to enforce that judgment, the judgment was ultimately upheld. Ms. Taylor has experienced thirteen years with no receipt of payment toward this judgment. There is no proof that she has been dilatory in pursuing the judgment or has otherwise

-14-

delayed the proceedings. The trial court did not err in awarding Ms. Taylor prejudgment interest commencing the date of the filing of her complaint.

With reference to post-judgment interest, in Tennessee such an award is mandatory. *See Watson v. Watson*, 309 S.W.3d 483, 501 (Tenn. Ct. App. 2009). Tennessee Code Annotated § 47-14-122 provides that "[i]nterest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for new trial." As our Supreme Court has elucidated:

> A party's right to post-judgment interest is based on its entitlement to the use of proceeds of a judgment. The purpose of post-judgment interest is to compensate a successful plaintiff for being deprived of the compensation for its loss between the time of the entry of the judgment awarding the compensation until the payment of the judgment by the defendants. Accordingly, a party who enjoys the use of funds that should have been paid over to another party should pay interest on the retained funds.
>
> The right to post-judgment interest is statutory. . . . This statute [*i.e.*, § 47-14-122] is mandatory and trial courts are not free to ignore it. The failure of a trial court's judgment or decree to specify post-judgment interest does not abrogate the obligation imposed by the statute.

*State v. Thompson*, 197 S.W.3d 685, 693 (Tenn. 2006) (quoting *Varnadoe v. McGhee*, 149 S.W.3d 644, 649 (Tenn. Ct. App. 2004)). Ergo, the trial court in this matter did not err in awarding Ms. Taylor post-judgment interest on the judgment. We affirm the trial court's award of both pre- and post-judgment interest in this case.

## VII. Conclusion

For the reasons stated above, we affirm the trial court's judgment in all respects. Exercising our discretion, we assess costs on appeal equally to the appellant, Melissa L. Taylor, and the appellee, James T. George, II. *See* Tenn. R. App. P. 40; *see, e.g., City of Knoxville v. Brown*, 260 S.W.2d 264, 268 (Tenn. 1953). This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE

-15-